**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT WALTER FORSTER,

    Defendant-Appellant.

No. 11-2230
(D.C. No. 2:11-CR-00107-WJ-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Following a jury trial, Defendant-Appellant Robert Walter Forster was

convicted of failure to comply with the Sex Offender Registration and

Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a) and 42 U.S.C.

§ 16913. The conviction stemmed from Mr. Forster's failure to register or update

his registration as required by SORNA. Mr. Forster appeals from his conviction

and sentence, raising four claims: (1) the evidence was insufficient to convict him

of knowingly "failing to register" under SORNA; (2) the district court erred as a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

matter of law in refusing to give his requested instructions on "residence" under SORNA; (3) he was deprived of a unanimous jury verdict because the indictment was duplicitous and the district court failed to cure the error by giving a more specific unanimity instruction; and (4) the district court committed procedural error in calculating his advisory United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range. Exercising jurisdiction under 28 U.S.C. § 1291, we reject these challenges and affirm Mr. Forster's conviction and sentence.

# I

Around January 2010, Mr. Forster moved into 123 Lomas Street, Mesquite, New Mexico. The house belonged to Jose Saavedra. Mr. Forster is required to register as a sex offender in New Mexico due to his August 2000 conviction on two counts of "gross sexual imposition" against a minor younger than thirteen years of age, in violation of Ohio Rev. Code. Ann. § 2907.05(A)(4) (West 2000). Consequently, around the time he moved in with Mr. Saavedra, Mr. Forster met with Deputy Harvell of the Doña Ana County Sheriff's Office to update his address in the sex-offender registry.

Within a few months of Mr. Forster living at 123 Lomas Street, Mr. Saavedra stopped accepting rent money from Mr. Forster because he wanted Mr. Forster to move out. In March 2010, Mr. Forster left 123 Lomas Street for roughly eight months, traveling to various locations including the Philippines. Subsequently, Deputy Harvell and Deputy U.S. Marshal Gunder began

2

investigating Mr. Forster's whereabouts. They determined that Mr. Forster had moved out of his room at 123 Lomas Street in March, despite the fact that he apparently left some of his possessions there, including his car. Mr. Saavedra showed the deputies a letter written by Mr. Forster, which was apparently sent from the Philippines.

Mr. Forster returned to New Mexico in late 2010 and stayed with Mr. Saavedra for a few days before moving to Hobbs, New Mexico. On December 14, 2010, Mr. Forster called Deputy Harvell to notify the Sheriff's Office of his change in address. He also sent a letter to Deputy Harvell, dated December 15, 2010. He then went to the Sheriff's Office on December 21, 2010, apparently to follow up on his change-in-address notification.

Mr. Forster was subsequently indicted for failure to comply with SORNA's registration requirements. According to the government, Mr. Forster had, in fact, moved out of Mr. Saavedra's home in March 2010, and never updated his registration information.

## II

Mr. Forster raises four challenges to his conviction and sentence: (1) the evidence was insufficient to convict him of knowingly "failing to register" under SORNA; (2) the district court erred as a matter of law in refusing to give his requested instructions on "residence" under SORNA; (3) he was deprived of a unanimous jury verdict because the indictment was duplicitous and the district

3

court failed to cure the error by giving a more specific unanimity instruction; and (4) the district court committed procedural error in calculating his advisory Guidelines range. We address each claim in turn.

## A

Mr. Forster first argues that the government presented insufficient evidence that he either actually changed his residence or knowingly failed to update his registration. He raised this issue in a motion for judgment of acquittal.

"In reviewing the sufficiency of the evidence and denial of a motion for judgment of acquittal, this court reviews the record *de novo* to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Irvin*, 682 F.3d 1254, 1266 (10th Cir. 2012). In conducting this inquiry, the court may "not 'weigh conflicting evidence.'" *Id.* (quoting *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003)). Moreover, the "court considers the entire record, including both direct and circumstantial evidence, together with the reasonable inferences to be drawn from it." *United States v. Mendez*, 514 F.3d 1035, 1041 (10th Cir. 2008).

"SORNA includes civil and criminal components." *United States v. Carel*, 668 F.3d 1211, 1213 (10th Cir. 2011), *cert. denied*, --- U.S. ----, 132 S. Ct. 2122 (2012). Its civil component, 42 U.S.C. § 16913, requires sex offenders, or those "convicted of a sex offense," *id.* § 16911(1), to register, "and keep the

4

registration current, in each jurisdiction where the offender resides." *Carel*, 668 F.3d at 1213 (quoting 42 U.S.C. § 16913) (internal quotation marks omitted). This requirement is more specifically stated as follows: "Sex offenders who change their name, residence, employment, or student status, must appear in person in at least one jurisdiction involved to inform the state's authorities of the change." *United States v. Murphy*, 664 F.3d 798, 799 (10th Cir. 2011) (internal quotation marks omitted).

SORNA's corresponding criminal provision, 18 U.S.C. § 2250(a), "imposes criminal penalties for failure to comply with § 16913's registration requirements." *Carel*, 668 F.3d at 1213. And, while § 16913 "applies to all sex offenders regardless of whether their convictions arise under federal or state law," *id.* at 1213–14 (quoting *United States v. Yelloweagle*, 643 F.3d 1275, 1278 (10th Cir. 2011)) (internal quotation marks omitted), § 2250(a) imposes criminal penalties only on SORNA offenders who are sex offenders "by reason of a conviction under federal law" *or* who otherwise "travel[] in interstate or foreign commerce," *id.* at 1214 (quoting *Carr v. United States*, 560 U.S. 438, 451 (2010)) (internal quotation marks omitted).

To establish a violation of SORNA in the instant case, the government had to prove that (1) Mr. Forster had a legal obligation under SORNA to update his registration due to a change in residence in a "jurisdiction where [he] resides," 42 U.S.C. § 16913(a)—*viz.*, a "jurisdiction involved," *id.* § 16913(c); (2) he

5

knowingly failed to comply with the obligation; and (3) he traveled in interstate or foreign commerce. *See* 18 U.S.C. § 2250; *see also United States v. Husted*, 545 F.3d 1240, 1243 (10th Cir. 2008). The parties stipulated that Mr. Forster was required by law to register as a sex offender. Mr. Forster contends, however, that the government failed to carry its burden of proof because the evidence showed that he went on an extended vacation, not that he changed his residence, and that he did not "knowingly" violate SORNA. We disagree.

**1**

Under SORNA, the "'jurisdiction where the offender resides' is usually a U.S. state—the state where the individual keeps his home or habitually lives." *Murphy*, 664 F.3d at 800–01 (quoting 42 U.S.C. § 16913(a)). On the other hand, "an offender's 'residence' is a specific dwelling place—for example, a house, apartment, or even a homeless shelter where an offender habitually lives." *Id.* at 801 (quoting 42 U.S.C. § 16913(c)). It is uncontested that 123 Lomas Street, while not Mr. Forster's home, is the place where he "habitually lived" from the beginning of 2010 to at least March of that year. "[T]he statutory language naturally supports the conclusion that abandoning one's living place constitutes a change in residence under SORNA. When [a sex offender] changes residences—whether by leaving his home, moving into a new dwelling, becoming homeless, or other means—he has a reporting obligation." *Id.*; *accord United States v. Voice*, 622 F.3d 870, 875 n.2 (8th Cir. 2010) (suggesting that "an

6

updated registration is required if a sex offender leaves his registered residence with no intent to return"); *United States v. Van Buren*, 599 F.3d 170, 174 (2d Cir. 2010) ("[D]efendant's conduct in terminating his residence to travel . . . , with no intention of returning to his residence . . . , qualifies as a 'change' in his residence regardless of which definition of 'change' one uses.").

The government offered evidence establishing that Mr. Forster moved out of Mr. Saavedra's home in March 2010, after being asked to leave. The government also presented a letter written by Mr. Forster from the Philippines, suggesting that he was engaged in various activities consistent with establishing a full-time residence there, such as purchasing a motorcycle. Mr. Forster contends that "on at least one occasion," he returned to New Mexico from a short "trip" and stayed with Mr. Saavedra. Aplt. Opening Br. at 17. But the incident to which he refers concerned a single instance where he stayed with Mr. Saavedra for only "a couple of days or a week." R., Vol. 4, at 151 (Test. of Jose Saavedra). This brief episode does not establish that 123 Lomas Street remained Mr. Forster's residence. Mr. Forster points to the fact that he left some possessions, including a car, at 123 Lomas Street as evidence that he did not intend to leave but instead wanted to take "an extended vacation." Aplt. Opening Br. at 18. While this argument is not entirely unreasonable, the jury was not required to accept it—particularly where the owner of the home, Mr. Saavedra, though acknowledging that Mr. Forster stored property at his home, clearly testified that

7

he expected Mr. Forster to live somewhere else upon his return from his travels. *See* R., Vol. 4, at 118 (responding "No" to the prosecutor's inquiry, "Did you have an understanding that [Mr. Forster] could come back and live with you [after his travels]?").

Viewing the evidence in the light most favorable to the government, *Irvin*, 682 F.3d at 1266, a rational trier of fact could have found that Mr. Forster no longer "habitually lived" at 123 Lomas Street beginning in March 2010 because he left that residence and had no intention of returning there—indeed, he could not do so, given that Mr. Saavedra had asked him to move out.

**2**

Mr. Forster contends that "[t]here was no evidence that New Mexico law required [him] to update his registration if he went on a trip" and that he "was never told he had to inform Deputy Harvell if he took a vacation." Aplt. Opening Br. at 21–22. It follows, reasons Mr. Forster, that he did not "knowingly" commit a violation of SORNA.[2] We are not persuaded.

---

[2] For the sake of clarity, we pause to expressly note a proposition that Mr. Forster does *not* advance here and that, accordingly, is *not* at issue: Mr. Forster does not argue that the government was obliged to prove that he acted with knowledge that his conduct violated SORNA, as opposed to proving only that he knowingly failed to update his registration. *See* Aplt. Opening Br. at 19 ("Mr. Forster contends that the government failed to present sufficient evidence from which a reasonable jury could find that he knowingly failed to comply with the registration requirements."). A number of circuits have addressed whether the more specific *mens rea* is an element of a prosecution under § 2250(a) and concluded that it is not—*viz.*, they have held § 2250(a)'s knowledge element is

(continued...)

The government's theory was not that Mr. Forster went on a vacation, but rather, that he intentionally abandoned his residence at 123 Lomas Street and failed to inform authorities of the change. In that vein, the government offered evidence that Mr. Forster knew that he was required to update his registration in light of *any* change in his address. *See* R., Vol. 4, at 165–66 (Test. of Adrian Gunder) (noting that Mr. Forster had acknowledged receipt of an instructional registration document); *cf. id.* at 160 (noting that Mr. Forster contacted Deputy Harvell in December 2010 to notify him of an address change). The jury was not required to credit Mr. Forster's contrary version of the facts. As such, viewing the evidence in the light most favorable to the government, *Irvin*, 682 F.3d

---

[2](...continued)
satisfied so long as the government proves that the sex offender was aware that he did not register or update his registration. *See, e.g.*, *United States v. Crowder*, 656 F.3d 870, 876–77 (9th Cir. 2011) ("In light of this analysis, we interpret § 2250(a)(3) as requiring the government to prove that a convicted sex offender knew of a registration requirement and knowingly failed 'to register or update a registration.' It does not require the government to prove that the sex offender also knew that the failure to register violates SORNA." (quoting 18 U.S.C. § 2250(a)(3))); *United States v. Vasquez*, 611 F.3d 325, 328 (7th Cir. 2010) ("Today we join the Fourth, Fifth, Eighth, and Eleventh Circuits . . . and hold that SORNA merely requires that a defendant have knowledge that he was required by law to register as a sex offender. The government need not prove that, in addition to being required to register under state law, a defendant must also know that registration is mandated by a federal statute."); *see also Voice*, 622 F.3d at 876 ("18 U.S.C. § 2250(a) does not require proof of specific intent to violate the law."). We have not had occasion to address this *mens-rea* question. And, because Mr. Forster does not press the point here, we leave the resolution of this question for another day.

9

at 1266, a rational jury could have found that Mr. Forster knowingly violated SORNA.

Because a rational jury could have found that Mr. Forster had a legal obligation under SORNA to update his registration due to a change in residence and that he knowingly failed to comply with this obligation, *see Husted*, 545 F.3d at 1243, Mr. Forster's sufficiency challenge to his SORNA failure-to-register conviction cannot prevail.

**B**

Mr. Forster next claims that the district court committed legal error by rejecting his requested instruction on the SORNA "residence" requirement. This proposed instruction provided that "[r]esidence requires more than physical presence at a place." R., Vol. 2, at 60 (Def.'s Req. Jury Instructions, filed Apr. 19, 2011). Rather, according to his instruction, residence depends on the person's "intent in being there," and a person has not effectively abandoned his current residence by "travel[ing]." *Id.* The instruction ultimately given by the district court stated, in pertinent part:

> [SORNA] requires a sex offender to report a change of . . . residence . . . . To change something means to make different from what it is or to substitute one thing for another. One's residence is defined as where one resides or maintains his home. The term "resides" means location of the individual's home or other place where the individual habitually lives. A change in residence does not require that you find that the defendant has established a new residence; rather, it is enough for you to find

10

> that the defendant's home or other place where he habitually lives is no longer the same as the one listed in the register.

*Id.*, Vol. 4, at 198–99. Mr. Forster contends that the district court's definition of "residence" permitted the jury to conclude that he violated SORNA simply by virtue of his "habitually being at some other place"—*viz.*, supposedly, because it was misled by the court's instructions, the "jury could have found that [he] had a duty to update his registration under SORNA . . . without finding that he had actually abandoned 123 Lomas as his residence." Aplt. Opening Br. at 23, 25.

"We review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Diaz*, 679 F.3d 1183, 1188 (10th Cir. 2012) (quoting *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008)) (internal quotation marks omitted). We review the district court's decision whether or not to give a particular instruction for abuse of discretion. *See id.*

The district court's instructions clearly and correctly stated the SORNA standards. The court instructed the jury that a "change in residence" occurs when one leaves his current place of residence, even if he has not yet found another residence. *See* R., Vol. 4, at 199. This instruction is consistent with SORNA's mandate that *any* change in residence must be reported, even if it does not lead to

11

the establishment of another residence. *See Murphy*, 664 F.3d at 801 ("When someone changes residences—whether by leaving his home, moving into a new dwelling, *becoming homeless*, or other means—he has a reporting obligation." (emphasis added)). And, by instructing the jury that a "change in residence" occurs when the defendant no longer habitually lives at the same residence "as the one listed in the register," R., Vol. 4, at 199, the district court expressly articulated the action that must be taken to effectuate such a change.

It is not an abuse of discretion to reject a defendant's proposed instruction in favor of other legally correct ones. *See, e.g.*, *United States v. Turner*, 553 F.3d 1337, 1347 (10th Cir. 2009) ("A district court properly exercises its discretion if the jury instructions as a whole 'correctly state the governing law and provide an ample understanding of the issues and the applicable standards.'" (quoting *United States v. Gonzales*, 535 F.3d 1174, 1179 (10th Cir. 2008))); *cf. United States v. Bader*, 678 F.3d 858, 872–73 (10th Cir.) (discerning no abuse of discretion in the district court's failure to give the defendant's requested instructions where his supportive arguments were "meritless"), *cert. denied*, --- U.S. ----, 133 S. Ct. 355 (2012). Accordingly, the district court did not abuse its discretion by refusing to give Mr. Forster's proposed instruction.

12

## C

Mr. Forster contends that he was deprived of a unanimous jury verdict in light of the government's assertion of duplicitous legal allegations and the district court's failure to properly instruct the jury on unanimity in light of the duplicity issue. Specifically, he claims that during trial the government argued that he had violated SORNA by, *inter alia*, (1) moving to Hobbs, New Mexico in March 2010 and not updating his registration to reflect that move; and (2) moving to the Philippines and failing to update his registration. Furthermore, according to Mr. Forster, there was more potential for confusion, for which the government apparently should be blamed: "There was even evidence that Mr. Forster may have traveled to Kentucky, and some jurors may have concluded that Mr. Forster should have registered in Kentucky." Aplt. Opening Br. at 33.

"An indictment is sufficient if it sets forth the elements of the offense charged [and] puts the defendant on fair notice of the charges against which he must defend . . . ." *United States v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)) (internal quotation marks omitted). "An indictment is duplicitous," and therefore improper, "if it 'charges the defendant with two or more separate offenses in the same count.'" *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011) (quoting *United States v. Haber*, 251 F.3d 881, 888 (10th Cir. 2001)). A duplicitous indictment presents the potential danger that the jury will convict

13

based upon one charged offense or the other in the same count, without necessarily reaching a verdict in unanimity, thus violating the defendant's Sixth Amendment guarantee of a unanimous verdict. *See id.*

As a threshold matter, Mr. Forster correctly acknowledges that the indictment is not duplicitous on its face. *See* Aplt. Opening Br. at 30; R., Vol. 2, at 5 (Indictment, filed Jan. 19, 2011). Nevertheless, he reasons that the government's arguments *at trial* spawned multiple new theories of the case that the jury may have relied upon in reaching a verdict. This argument lacks merit.

To begin, we note that Mr. Forster did not make a duplicity objection below. A "challenge to an indictment based on duplicity must be raised *prior to* trial. . . . Raising the objection at the close of the government's case is too late." *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) (omission in original) (emphasis added) (quoting *United States v. Hager*, 969 F.2d 883, 890 (10th Cir. 1992)); *see* Fed. R. Crim. P. 12(b)(2); *id.* § 12(b)(3)(B). Consequently, Mr. Forster's subsequent challenge on appeal is arguably waived. However, upon a showing of "cause" that could overcome the waiver, we may consider the merits of Mr. Forster's argument. *Trammell*, 133 F.3d at 1354. Mr. Forster argues that such cause is demonstrated by virtue of the fact that the indictment is not facially

duplicitous.  As Mr. Forster sees it, he thus had no reason to object before trial, as

*Trammell* requires.[3]  *See id.*

Even assuming that Mr. Forster has shown cause for his failure to present a

duplicity objection *prior to* trial, he also did not object to the government's

alleged change in theory *during* trial—a change that he now claims rendered the

indictment duplicitous—nor did he object during trial to the district court's failure

to offer a tailored unanimity instruction sufficient to cure any resulting

confusion.[4]  We therefore review both of these arguments for plain error—which

Mr. Forster acknowledges is appropriate.  *See United States v. Fredette*, 315 F.3d

1235, 1243 (10th Cir. 2003) ("Where, as in this case, a defendant does not request

a specific unanimity instruction, we review the lack of such an instruction under

the plain error standard." (citation omitted) (internal quotation marks omitted)).

To prevail on plain-error review, Mr. Forster

---

[3]    Some courts have indeed suggested that, where the duplicity of the indictment later becomes apparent, a defendant cannot be faulted for failing to object before trial.  *See United States v. Pietrantonio*, 637 F.3d 865, 871 (8th Cir. 2011) (recognizing that an indictment may be "rendered duplicitous by the evidence presented at trial"); *cf. United States v. Coiro*, 922 F.2d 1008, 1013 (2d Cir. 1991) (holding that a pre-trial objection was not necessary to the alleged *multiplicity* of an indictment because "neither the nature of [the defendant's] conduct nor the fact that [two counts] charge the same conduct was evident from the face of the indictment").

[4]    The district court did give a *general* unanimity instruction.  *See* R., Vol. 4, at 208.  This was not, in Mr. Forster's opinion, sufficient to cure the prejudice arising from the duplicitous indictment.

15

> must demonstrate: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011) (alteration in original) (quoting *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007)).

Mr. Forster cannot prevail on his duplicity argument because it was not error, much less plain error, for the district court to permit the trial to proceed or to fail to give a more specific unanimity instruction. Nothing in the government's pre-trial or trial arguments suggested that its theory of the case was multi-faceted. *Cf. Pietrantonio*, 637 F.3d at 869 ("[A]t oral argument, the government conceded that the indictment was duplicitous . . . ."). To the contrary, the government repeatedly emphasized that its sole theory was that Mr. Forster failed to update his New Mexico registration when he left 123 Lomas Street. Evidence regarding where Mr. Forster set up a home afterward—though probably relevant to establishing a separate SORNA violation—was offered merely to show that he did not intend to return to 123 Lomas Street. *See, e.g.*, R., Vol. 4, at 84–85 (Pre-trial Tr., filed Jan. 21, 2012) ("We object to the inclusion [in the instructions] of the localities at issue, because we think it just frankly misstates our case. It states that the government alleges the defendant violated 2255 [sic] by changing his residence to the Philippines. That's frankly not true. We allege that Mr. Forster

16

violated SORNA by leaving 123 Lomas Street and then not returning, and so we don't want to be [required] to prove that he actually moved to the Philippines . . . or anywhere else."); *id.* at 212 (Trial Tr., filed Jan. 21, 2012) ("So the question you need to figure out, the question of fact for you to decide is, did defendant change his address from 123 Lomas Street sometime after March [2010] and sometime before December [2010] . . . ?"); *cf. Pietrantonio*, 637 F.3d at 870 ("[T]he evidence at trial suggested that [the SORNA violation] could have occurred in Minnesota, Nevada and/or Massachusetts.").  Mr. Forster's arguments to the contrary misinterpret the government's theory and conflate supporting evidence with a separate criminal charge.

For the foregoing reasons, there is no basis to conclude that the government presented multiple ways for the jury to convict Mr. Forster.  Consequently, Mr. Forster has failed to show that the indictment was rendered duplicitous by the government's arguments at trial.  *See Washington*, 653 F.3d at 1263.  Likewise, the district court did not plainly err in failing to give a more detailed unanimity instruction to remedy any purported duplicity.

**D**

Lastly, Mr. Forster argues that the district court committed procedural error in calculating his advisory Guidelines range.  *See United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011) ("[A] procedural challenge relates to the 'method by which the sentence is calculated.'" (quoting *United States v. Wittig*, 528 F.3d

17

1280, 1284 (10th Cir. 2008))). Specifically, Mr. Forster contests the court's conclusion that he should be considered a Tier III sex offender pursuant to U.S.S.G. § 2A3.5 and its denial of a three-level reduction for his purportedly having voluntarily corrected his registration in December 2010.

"We review a sentence for abuse of discretion. We review the court's legal conclusions de novo and its factual findings for clear error." *United States v. Burgess*, 576 F.3d 1078, 1101 (10th Cir. 2009) (citations omitted). "A sentence is procedurally reasonable when the district court computes the applicable Guidelines range, properly considers the [18 U.S.C.] § 3553(a) factors, and 'afford[s the defendant his] rights under the Federal Rules of Criminal Procedure.'" *United States v. Martinez-Barragan*, 545 F.3d 894, 898 (10th Cir. 2008) (second alteration in original) (citation omitted).

**1**

Pursuant to U.S.S.G. § 2A3.5,[5] a court should apply a base offense level of sixteen if the defendant is a Tier III sex offender. *See* U.S.S.G. § 2A3.5(a)(1). The offenses that qualify a defendant for the designation of Tier III sex offender are set forth in 42 U.S.C. § 16911(4). Of particular importance here, a "Tier III offender" includes "a sex offender whose offense is punishable by imprisonment

---

[5]    The U.S. Probation Office used the 2010 version of the Guidelines in computing the applicable advisory sentencing range for the Presentence Investigation Report ("PSR"). *See* R., Vol. 3, at 9 (PSR, filed Feb. 1, 2012). Neither party has objected to the use of the 2010 version. Therefore, that version provides the framework for our analysis here.

18

for more than 1 year" and "[the offense] is comparable to or more severe than . . . abusive sexual contact (as described in [18 U.S.C. § 2244]) against a minor who has not attained the age of 13 years."  42 U.S.C. § 16911(4)(A)(ii); *see* U.S.S.G. § 2A3.5 cmt. n.1.  *See generally* John A. Hall, *Sex Offenders and Child Sex Tourism: The Case for Passport Revocation*, 18 Va. J. Soc. Pol'y & L. 153, 180 n.149 (2011) ("Tier III sex offenders are those convicted of the crimes of conspiracy to commit the crimes of aggravated sexual abuse or sexual abuse, abusive sexual contact against a minor under thirteen years old, or involving non-parental kidnapping of a minor.").

The PSR classified Mr. Forster's prior conviction of "gross sexual imposition," *see* Ohio Rev. Code Ann. § 2907.05(A)(4),[6] as a Tier III sex offense,

---

[6]     In pertinent part, the statute reads:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
> . . . .
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

Ohio Rev. Code Ann. § 2907.05(A)(4).  Another provision of the same statute further provides that whoever commits a violation of subsection (A)(4) is "guilty of gross sexual imposition," which is "a felony of the third degree," *id.* § 2907.05(B), punishable by more than one year of imprisonment, *see id.* § 2929.14(A)(3).

and Mr. Forster lodged an objection. *See* R., Vol. 2, at 186–87 (Def.'s Objections to the PSR & Sentencing Mem., filed Aug. 26, 2011). Mr. Forster reasoned that his conviction should have been categorized as a Tier I offense because there is no indication that it involved any of the conduct underlying Tier II and Tier III offenses. *See id.* at 186–88. The district court disagreed.

The district court found that Mr. Forster's prior conviction, while not precisely identical to 18 U.S.C. § 2244, was comparable in that both statutes prohibit sexual abuse of a minor—that is, § 2244 facially protects minors under the age of twelve, and Ohio Rev. Code Ann. § 2907.05(A)(4) protects minors under the age of thirteen. *See* R., Vol. 4, at 250–51 (Sentencing Tr., dated Oct. 27, 2011). The court alluded to the disturbing circumstances of Mr. Forster's crime, noting that he "was convicted for vaginally and anally penetrating his then eight-year-old daughter" and that "the victim . . . had indicated the abuse had been going on since she was five." *Id.* at 251. Moreover, the court pointed out that had the conduct forming the basis of Mr. Forster's prior conviction taken place on federal land, it would have been punishable under § 2244. *See id.*

In arguing that the district court erred in assigning him to Tier III, Mr. Forster vigorously objects to the district court's consideration of the facts underlying his prior conviction. He insists that the district court should have employed a categorical approach that would compare the elements of his Ohio offense to the elements of the relevant enumerated offenses under 42 U.S.C.

20

§ 16911(4)(A)—most importantly, for present purposes, the elements of § 2244.

However, notwithstanding Mr. Forster's insistence that a categorical approach is the correct one, our circuit actually has not had occasion to consider the appropriate methodology for assessing whether a prior conviction is comparable to or more severe than a named offense under SORNA.

> In the contexts of immigration law and of the enhancement of criminal sentences, courts usually apply a categorical, or modified categorical, approach to determine whether the crime of which the defendant was convicted meets the statutory requirements to have immigration consequences or provides the basis for a sentencing enhancement, rather than allowing examination of the underlying facts of an individual's crime.

*United States v. Mi Kyung Byun*, 539 F.3d 982, 990 (9th Cir. 2008); *see, e.g.*, *Taylor v. United States*, 495 U.S. 575, 602 (1990) (applying the categorical approach in assessing applicability of a sentencing enhancement under the Armed Career Criminal Act); *United States v. Venzor-Granillo*, 668 F.3d 1224, 1227 (10th Cir. 2012) (applying the categorical approach in the illegal re-entry context in addressing whether a defendant's "prior conviction is an aggravated felony under the Sentencing Guidelines").

However, it is far from clear whether a categorical approach should be applied in the SORNA context. *See, e.g.*, *United States v. Stock*, 685 F.3d 621, 628 (6th Cir. 2012) ("Admittedly, there was (and remains) some doubt about the extent to which Guidelines § 2A3.5(a) directs district courts to look beyond the mere fact of a prior sex-offense conviction and into the specific factual

21

circumstances of that offense."); *Byun*, 539 F.3d at 991 (applying a non-categorical approach at least to the limited question of "the age of the victim"). But we need not definitively opine on the subject; even giving Mr. Forster the benefit of this approach, he cannot prevail on his sentencing challenge.

In applying the categorical approach, we look first to the elements of Mr. Forster's state offense of conviction. *See, e.g.*, *United States v. [Kenneth] Taylor*, 644 F.3d 573, 576 (7th Cir. 2011) ("To calculate the advisory Guideline range for a violation of SORNA, the judge must first determine the defendant's tier classification. The judge usually accomplishes this task by examining the elements of the statute under which the defendant was convicted. This is called the 'categorical approach.'" (citation omitted)). This statute provides in pertinent part that "[n]o person shall have sexual contact with another . . . when . . . [t]he other person . . . is less than thirteen years of age . . . ." Ohio Rev. Code Ann. § 2907.05(A)(4). "Sexual contact" is defined under Ohio law as "*any* touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is female, a breast, for the purpose of sexually arousing or gratifying either person." *Id.* § 2907.01(B) (emphasis added).

Thus, the Ohio statute would appear by its plain terms to punish any sexually-oriented touching—whether directly or through the clothing—of an erogenous zone of a minor less than thirteen years of age. *See, e.g.*, *State v.*

22

*Young*, No. 96 CA 1780, 1997 WL 522808, at *4 (Ohio Ct. App. Aug. 15, 1997) ("[T]he definition of 'sexual contact' . . . should be interpreted to include touching of erogenous zones covered by clothing." (citation omitted)); *State v. Mundy*, 650 N.E.2d 502, 510 (Ohio Ct. App. 1994) ("In order to convict a defendant of this offense, the state is obligated to prove beyond a reasonable doubt that the defendant's purpose or specific intention in touching the victim on the proscribed areas of the body . . . was sexual arousal or gratification of either the perpetrator or the victim." (citation omitted)).

We now turn to 18 U.S.C. § 2244 to see whether the elements of any of the offenses that this statute proscribes are sufficiently comparable to the elements of Ohio Rev. Code Ann. § 2907.05(A)(4). Section 2244's structure is not commonplace; the statute sets forth its prohibited acts in large part through cross-references to very serious criminal conduct punished by other criminal provisions found in 18 U.S.C. §§ 2241, 2242, and 2243. In very broad strokes, § 2244 punishes any person who, "in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes sexual contact with or by another person, if so to do would violate" those cross-referenced criminal provisions, *see id.* § 2244(a)(1)–(5), if the specific misconduct at issue had constituted a "sexual act"—which is the proscriptive concern of those cross-referenced provisions—instead of "sexual contact"—which is the proscriptive concern of § 2244.

23

"[S]exual contact" is defined as "the intentional touching, *either directly or through the clothing*, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3) (emphasis added). As defined, "sexual contact" would seemingly "require the actual touching, a meeting of body surfaces," but "the touching could occur either directly or through the clothing." *United States v. Hayward*, 359 F.3d 631, 641 (3d Cir. 2004).[7]

The provisions that § 2244 cross-references involve a wide range of "sexual acts"—significantly, many relate to unlawful sexual conduct directed at minors. *See, e.g.*, 18 U.S.C. § 2243(a) (punishing a person who "knowingly engages in a sexual act with another person who . . . has attained the age of 12 years but has not attained the age of 16 years . . . [and] is at least four years younger than the person so engaging"). For purposes of the comparability analysis, it is especially noteworthy that (by cross-reference) § 2244 proscribes "knowingly engag[ing]" in sexual contact "with another person who has not attained the age of 12 years," *id.* § 2241(c). Just viewing this provision alone, one might reasonably conclude that the Ohio statute at issue—which forbids a person from having "sexual contact

---

[7] On the other hand, "sexual act" is defined as, *inter alia*, "the intentional touching, *not through the clothing*, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D) (emphasis added). A "sexual act" "requires skin-to-skin touching." *Hayward*, 359 F.3d at 641.

with another . . . when . . . [t]he other person . . . is less than thirteen years of age," Ohio Rev. Code Ann. § 2907.05(A)(4)—is comparable to § 2244.

To be sure, on its face, the protective sweep of the Ohio statute would appear to be slightly broader, protecting minors under thirteen—instead of just those under twelve—from unlawful sexual contact. However, SORNA's tier regime only demands that the statutes be "comparable," not that they be identical. 42 U.S.C. § 16911(3)(A). And, more importantly, SORNA effectively negates this temporal point of distinction because it expressly defines the scope of § 2244's substantive provisions, for purposes of the tier regime, to apply to only "a minor who has not attained the age of 13 years." *Id.* § 16911(4)(A)(ii). In other words, viewed through the lens of SORNA, the Ohio statute and § 2244—by cross-reference to § 2241(c)—protect the same age group of minors from unlawful sexual contact.

Thus, it can be said that both statutes punish sexually-oriented touching—whether directly or through the clothing—of an erogenous zone of a minor less than thirteen years of age. The only patent difference between Ohio's "gross sexual imposition" statute and § 2244, as we have discussed it here, relates to the latter's specifications regarding where the offense must occur—a site with a sufficient federal nexus, e.g., "the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 2244(a). However, such specifications relate to jurisdiction alone and, as such, plainly do not bear on the rationale for SORNA's

25

"tier" system, which categorizes the severity of a sex-offense conviction based on the nature of the underlying conduct. We deem this jurisdictional point to be an immaterial difference for purposes of our comparability analysis.

Therefore, applying a categorical approach, we conclude that Ohio Rev. Code Ann. § 2907.05(A)(4) is comparable to a violation of 18 U.S.C. § 2244. In other words, even assuming *arguendo* that the district court should have ignored the factual circumstances of Mr. Forster's offense in determining his tier status for purposes of U.S.S.G. § 2A3.5(a)(1), we conclude that Mr. Forster was properly designated as a Tier III sex offender. Accordingly, we uphold the district court's ruling to this effect.

## 2

Mr. Forster contends that the district court erred in calculating his Guidelines range by failing to decrease his base offense level under U.S.S.G. § 2A3.5(b)(2) for voluntarily correcting his failure to register. That provision provides that "[i]f the defendant voluntarily (A) corrected the failure to register; or (B) attempted to register but was prevented from registering by uncontrollable circumstances [to which he] did not contribute," the court should reduce his base offense level by three levels. U.S.S.G. § 2A3.5(b)(2). Under § 2A3.5(b)(2), "the defendant's voluntary attempt to register or to correct the failure to register must have occurred prior to the time the defendant knew or reasonably should have

known a jurisdiction had detected the failure to register." *Id.* § 2A3.5(b)(2) cmt. n.2(A).

The district court noted that Mr. Forster had eventually sought to update his registration in December 2010, but nonetheless denied Mr. Forster's request to apply the reduction for voluntary correction because he failed to notify the authorities of his earlier changes in address. *See* R., Vol. 4, at 260. The court reasoned:

> Mr. Forster first contacted the Doña Ana County Sheriff's Department task force officer the day after his return from the second international trip and indicated he intended to move from Mesquite, New Mexico, to Hobbs, New Mexico. There was no mention during the conversation of his trips to the Philippines where the first time was an approximately two-month stay, the second time was approximately a three-month stay. Now, based on this, the Probation Office as well as the government asserts that [Mr. Forster] is not entitled to a three-level reduction under [U.S.S.G. § 2A3.5(b)(2)], and [the court] agree[s] with th[is] analysis . . . .

*Id.*

It is patent that the inquiry under U.S.S.G. § 2A3.5(b)(2) is an inherently factual one.[8] Accordingly, we review only for clear error. "We may reverse the

---

[8] We have viewed "voluntariness" in other contexts as a factual question because it depends on the defendant's state of mind and can be determined only upon inferences drawn from the evidence. *See, e.g.*, *United States v. Hunter*, 663 F.3d 1136, 1145 (10th Cir. 2011). Moreover, whether the "defendant knew or reasonably should have known a jurisdiction had detected the failure to register," U.S.S.G. § 2A3.5(b)(2) cmt. n.2(A), is an inherently fact-based question. *Cf. United States v. Borst*, 62 F.3d 43, 47 (2d Cir. 1995) (considering a challenge to an "actual or constructive knowledge" Guideline and

(continued...)

27

district court's . . . [factual finding] as clearly erroneous only if it is implausible in light of the entire record on appeal." *United States v. McClatchey*, 316 F.3d 1122, 1129 (10th Cir. 2003). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *accord United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004).

We conclude that the district court's ruling was not clearly erroneous. In effect, the district court determined that Mr. Forster's purportedly corrective conduct in December 2010 did not constitute a voluntary correction of his failure to register because it actually reflected "his desire to perpetuate the false claim that he had been residing at 123 Lomas Street the whole time." Aplee. Br. at 35. The court's reasoning is consonant with the apparent concern of the Guidelines commentary that any corrective action be genuine and free from guile or deception. That is, just as a defendant is disqualified from receiving the downward adjustment if his corrective action occurs after he knows or reasonably should have known that law enforcement has detected his registration delict, *see* U.S.S.G. § 2A3.5(b)(2) cmt. n.2(A), a defendant should be disqualified from

---

[8](...continued)
finding it to be factual in nature); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172 (10th Cir. 1974). Accordingly, our review here is for clear error. *See United States v. Diaz*, 313 F. App'x 735, 736 (5th Cir. 2009) (per curiam) (reviewing for clear error the district court's ruling under U.S.S.G. § 2A3.5(b)(2)).

receiving the downward adjustment if his purported corrective action is not a genuine attempt to correct his registration record, but rather an effort to cover up falsity and to embed it into that record.

And the district court's ruling finds support in the record. Specifically, Mr. Forster contacted Deputy Harvell by phone on December 14, 2010 and by a letter dated December 15, 2010. But, in both the phone call and the letter, Mr. Forster reported only a change in residence from Mesquite, New Mexico to Hobbs, New Mexico. At no point did Mr. Forster disclose that he had left 123 Lomas Street in March 2010 and traveled to the Philippines, among other places, during the eight months that he was out of contact with Deputy Harvell. Given Mr. Forster's failure in both his phone call and his letter to disclose his whereabouts since March 2010, we conclude that the district court did not clearly err in determining that Mr. Forster's efforts did not amount to a voluntary correction of his failure to register.[9]

---

[9] During oral argument, the government argued that we could also uphold the district court's ruling on the related theory that Mr. Forster—by virtue of his deceptive conduct—actually failed to correct his registration. This theory finds footing in the text of the Guidelines. Specifically, a defendant could seemingly be disqualified from receiving the voluntary-correction reduction not only if he made the correction involuntarily, but also if he actually did not make the correction to begin with—*viz.*, a voluntary correction of a failure to register must be both (1) voluntary and (2) a correction. Although we disfavor the government's interjection of this theory into the litigation at the late stage of oral argument, we recall that "[w]e have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp.,*

(continued...)

29

**III**

For the foregoing reasons, we **AFFIRM** Mr. Forster's conviction and sentence.

Entered for the Court


JEROME A. HOLMES
Circuit Judge

---

[9](...continued)
*Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). We believe that this actual-correction theory provides an alternative ground to affirm the district court. By virtue of his deceptive conduct in failing most notably to disclose to law enforcement his trips overseas, Mr. Forster did not actually correct his registration record when he contacted the Sheriff's Office in December 2010.