FILED
United States Court of Appeals
Tenth Circuit

December 30, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

LESTER RAY NICHOLS,

       Defendant - Appellant.

No. 14-3041

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:13-CR-10106-JTM-1)

Timothy J. Henry, Assistant Public Defender (Melody Brannon Evans, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Wichita, Kansas, for Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Appellee.

Before **McHUGH, McKAY,** and **BALDOCK,** Circuit Judges.

**McHUGH**, Circuit Judge.

## I. INTRODUCTION

Lester Nichols is a convicted sex offender who left the United States without updating his status on the federal sex offender registry. He was brought back to the United States and charged with failing to register, in violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a). On appeal, he challenges his conviction based on two theories: (1) SORNA's updating requirement does not apply in situations like his where the sex offender moves from a SORNA jurisdiction to a non-SORNA jurisdiction, and (2) SORNA's delegation of authority to the Attorney General to determine SORNA's retroactive application is unconstitutional. We reject both arguments and therefore affirm Mr. Nichols's conviction.

## II. BACKGROUND

In 2003, Mr. Nichols was convicted of traveling interstate with the intent to engage in sex with a minor, in violation of 18 U.S.C. § 2423(b). He was sentenced to 120 months imprisonment. Although Mr. Nichols's conviction occurred before SORNA's 2006 enactment, the U.S. Attorney General issued a rule in 2007 extending the requirements of SORNA "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3. This rule was issued pursuant to the authority Congress delegated to the Attorney General under SORNA. *See* 42 U.S.C. § 16913(d) ("The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter . . . ."). Mr. Nichols, as a

preenactment sex offender, is thus required to comply with SORNA's registration requirements.

By 2012, Mr. Nichols had been released from prison and was placed under federal supervision in the District of Kansas. Up until that time, he had complied with both the Kansas and SORNA sex offender registration requirements. In November 2012, Mr. Nichols took a plane from Kansas City to Manila, Philippines, without updating his sex offender registry. One month later, he was arrested by Philippine law enforcement officers and was turned over to State Department custody for deportation to the United States. Mr. Nichols was charged with and indicted for one count of failure to update a registration as required by SORNA. *See* 18 U.S.C. § 2250(a).

Mr. Nichols moved to dismiss the indictment. He argued before the district court that SORNA did not require him to register as a sex offender while he was in the Philippines because, once in the Philippines, he did not reside in a U.S. jurisdiction. Mr. Nichols also contended SORNA's delegation of authority to the Attorney General to determine SORNA's application to preenactment sex offenders like him is unconstitutional.

The district court rejected Mr. Nichols's first argument in light of *United States v. Murphy*, 664 F.3d 798 (10th Cir. 2011), where we held that a defendant violated SORNA when he moved from Utah to Belize without updating his status on the sex offender registry. The district court also rejected Mr. Nichols's nondelegation argument. The court acknowledged the lack of binding Tenth Circuit precedent addressing this issue, but

-3-

noted our observation in dicta that SORNA's registration provision does not violate the nondelegation doctrine. *United States v. Carel*, 668 F.3d 1211, 1214 (10th Cir. 2011). The district court also looked to *United States v. Rickett*, 535 F. App'x 668 (10th Cir. 2013) (unpublished), wherein we rejected a nondelegation argument under plain error review because, absent controlling precedent, application of SORNA to a preenactment offender was not plainly unconstitutional. Finally, the district court explained that the clear weight of authority from other circuits has rejected nondelegation challenges to 42 U.S.C. § 16913(d). Accordingly, the district court ruled SORNA's delegation of authority under § 16913(d) is not unconstitutional and denied Mr. Nichols's motion to dismiss. Mr. Nichols thereafter entered a conditional guilty plea, reserving the right to appeal both issues. He now does so and we exercise our jurisdiction under 28 U.S.C. § 1291.

### III. DISCUSSION

Mr. Nichols appeals both elements of the district court ruling. He first contends SORNA's requirement that an offender keep his registration current does not apply to offenders who change their residence to a non-SORNA jurisdiction. In so arguing, he asks us to overturn our precedent in *United States v. Murphy*, wherein we held, "a sex offender, upon changing his residence, [must] update his registration in a jurisdiction involved . . . even if he did not establish a new residence in a SORNA jurisdiction." 664 F.3d 798, 803 (10th Cir. 2011). Mr. Nichols alternatively argues we should vacate his conviction on the basis that 42 U.S.C. § 16913(d) creates an unconstitutional delegation of authority by permitting the Attorney General to determine SORNA's application to

-4-

preenactment sex offenders. These issues "involve statutory interpretations of and constitutional challenges to SORNA," which we review de novo, "interpreting the words of the statute in light of the purposes Congress sought to serve." *United States v. Hinckley*, 550 F.3d 926, 928 (10th Cir. 2008) (brackets and internal quotation marks omitted), *abrogated on other grounds by Reynolds v. Unites States*, 132 S. Ct. 975 (2012).

### A. *Extraterritorial Changes of Residence under SORNA*

SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA defines "jurisdiction" as including U.S. states, territories, and Indian reservations, but not foreign nations. *Id.* § 16911(10). It defines "resides" as "the location of the individual's home or other place where the individual habitually lives." *Id.* § 16911(13). When a sex offender has a change of residence, he "keep[s] the registration current" by "not later than 3 business days after each change of . . . residence . . . appear[ing] in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform[ing] that jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 16913(c). In regard to his residence, the sex offender must provide for the registry "[t]he address of each residence at which the sex offender resides or will reside." *Id.* § 16914(a)(3). Mr. Nichols argues the plain language of these SORNA provisions indicates that the

-5-

requirement to "keep the registration current" does not apply to sex offenders who have a change of residence to a non-SORNA jurisdiction.

We squarely addressed this issue in *United States v. Murphy*, 664 F.3d 798 (10th Cir. 2011). The defendant in *Murphy* was a registered sex offender who had resided in a correctional facility in Utah, departed from Utah by bus, arrived in California, then took a taxi to Mexico, and ultimately ended up in Belize where he lived for six months. *Id.* at 799–800. Mr. Murphy was deported to the United States and was charged with and convicted of failing to update his sex offender registry, in violation of 18 U.S.C. §2250(a). *Id.* at 800. On appeal, Mr. Murphy challenged his conviction on the basis that he had no obligation to update his registration after he left a SORNA jurisdiction for a non-SORNA jurisdiction. *Id.*

We affirmed Mr. Murphy's conviction, interpreting SORNA otherwise. We interpreted the phrase "jurisdiction where the offender resides" from § 16913(a) and term "residence" as used in § 16913(c) as two different concepts—the former meaning "the state where the individual keeps his home or habitually lives" and the latter meaning "a specific dwelling place . . . where an offender habitually lives." *Id.* at 800–801. And we concluded the two terms trigger different obligations: "the offender's jurisdiction is where he must keep his registration current, while the offender's residence is a specific piece of registry information, a change of which sparks a reporting duty." *Id.* at 801.

From this interpretation, we drew three conclusions. First, "abandoning one's living place constitutes a change in residence under SORNA." *Id.* Second, "[w]hen an

offender leaves a residence in a state, and then leaves the state entirely, that state remains a jurisdiction involved." *Id.* at 803. And third, "a reporting obligation does not disappear simply because an individual manages to relocate to a non-SORNA jurisdiction before the three-day deadline for updating a registration has passed." *Id.* Applying this interpretation to Mr. Murphy's case, we ruled, "a legal obligation to update his registration attached" when Mr. Murphy left the correctional facility "while he was still in Utah, and not when he arrived in Belize." *Id.* at 804. And even though Mr. Murphy "was no longer living in Utah when his failure to register became punishable" (i.e., three days after his change of residence), "Utah remained a 'jurisdiction involved' under SORNA because it was his current jurisdiction when the reporting obligation arose." *Id.* We therefore affirmed his conviction for failure to register under § 2250(a).

Earlier this year we reaffirmed *Murphy*'s interpretation of SORNA. *United States v. Lewis*, 768 F.3d 1086, 1091–92 (10th Cir. 2014). We explained in *Lewis* that "*Murphy*'s logic [is] controlling" and concluded, "The effect of *Murphy*'s holding is that the abandonment of a permanent residence triggers a sex offender's obligation to update his registration" and "the departure district remains a 'jurisdiction involved' even after the sex offender has left the state." *Id.*

Mr. Nichols contends that *Murphy* misinterpreted SORNA and we should therefore overturn it. In so arguing, Mr. Nichols relies primarily on three sources: (1) Judge Lucero's dissenting opinion in *Murphy*, 664 F. 3d at 806, which asserted that the majority "impermissibly rejects the statutory definition of 'resides' . . . . [and] avoids

-7-

a plain text reading of the statute by giving two different meanings to the defined term 'resides'"; (2) the Eighth Circuit's opinion in *United States v. Lunsford*, 725 F.3d 859, 862 (8th Cir. 2013), which disagreed with *Murphy*'s interpretation of SORNA; and (3) the U.S. Supreme Court's decision in *Carr v. United States,* 560 U.S. 438, 447–49 (2010), which looked to the plain language of § 2250 and concluded Congress's use of present tense verbs "strongly supports a forward-looking construction" and therefore the elements of § 2250 must be met sequentially for a violation to occur.

Regardless of the merits of these arguments, we are bound by the majority opinion in *Murphy*. Indeed, one panel of this court cannot overrule the judgment of another panel "absent en banc consideration . . . [or] an intervening Supreme Court decision that is contrary to or invalidates our previous analysis." *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014) (internal quotation marks omitted). Neither exception to our horizontal stare decisis rule is present here. Mr. Nichols attempts to characterize *Carr* as the type of contrary Supreme Court authority that would invalidate *Murphy*. But *Carr* was decided before *Murphy* and is therefore not an intervening decision. And although Mr. Nichols correctly notes that *Murphy* did not address the Supreme Court's *Carr* decision, our later *Lewis* decision did, ruling that *Carr* "does not dictate an alternative conclusion" to the conclusion reached in *Murphy*. 768 F.3d at 1091 n.4. *Murphy* is therefore controlling.

Applying *Murphy*'s interpretation of SORNA to this case, we affirm Mr. Nichols's conviction under § 2250(a). By boarding the plane to the Philippines, Mr. Nichols

abandoned his residence in Kansas—a "jurisdiction involved." This change in residence triggered a registry obligation in Kansas, which Mr. Nichols did not fulfill. Mr. Nichols therefore violated § 2250(a) by failing to update his registry in Kansas within three days of his change in residence.

## B. Delegation under SORNA

Mr. Nichols alternatively argues we should vacate his SORNA conviction on the basis that SORNA's delegation of authority to the Attorney General to determine SORNA's preenactment application, 42 U.S.C. § 16913(d), is unconstitutional. Mr. Nichols insists that in applying the nondelegation doctrine to this case, we should apply a heightened "meaningful constraint" standard, instead of the more lenient "intelligible principles" standard, because Congress delegated authority under SORNA that relates to the imposition of criminal liability. We disagree both as to the relevant legal standard and the application of that standard and conclude that § 16913(d) does not violate the nondelegation doctrine.

### 1. The Nondelegation Doctrine

Under the U.S. Constitution, "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST., art. I, § 1. From this language and based on separation of powers principles, the Supreme Court "has derived the nondelegation doctrine: that Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991). Nonetheless, Congress may delegate authority to a different branch, and "[s]o

-9-

long as Congress shall lay down by legislative act an intelligible principle to which the

person or body authorized to exercise the delegated authority is directed to conform, such

legislative action is not a forbidden delegation of legislative power." *Mistretta v. United

States*, 488 U.S. 361, 372 (1989) (brackets and internal quotation marks omitted). The

Supreme Court has further explained that an intelligible principle exists so long as

"Congress clearly delineates [1] the general policy, [2] the public agency which is to

apply it, and [3] the boundaries of this delegated authority." *Id.* at 372–73.[1]

## 2. Delegation under 42 U.S.C. § 16913(d)

Applying this standard to SORNA, we concluded that § 16913(d) does not violate

the nondelegation doctrine. The language of SORNA demonstrates, first, that Congress

clearly delineated the general policy upon which SORNA is based. Section 16901

expresses the congressional policy embodied in SORNA: "to protect the public from sex

---

[1] Under this standard, the Supreme Court has struck down statutes delegating power to an administrative agency on only two occasions, "one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 474 (2001) (citing *Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935)). *Panama Refining Co.* and *Schechter Poultry* constitute the "outer limits" of the Supreme Court's nondelegation precedent and demonstrate the Court's reticence "to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Id.* at 474–75 (internal quotation marks omitted); *see also United States v. Rickett*, 535 F. App'x 668, 675 (10th Cir. 2013) (unpublished), *cert. denied,* 134 S. Ct. 1529 (2014) ("[T]he Supreme Court has never expressly overruled *Schechter Poultry* or *Panama Refining;* so the doctrine, even if dead, has never received a proper burial.").

offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders." This policy statement conveys the intelligible principles upon which the Attorney General's delegated authority must be based. *See United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013) (concluding that SORNA's broad policy statement contained in § 16901 is "sufficient to provide an intelligible principle for delegation"); *United States v. Goodwin*, 717 F.3d 511, 516 (7th Cir. 2013) (explaining that § 16901 "provides sufficient guidance to the Attorney General").

Second, Congress clearly delineated "the public agency which is to apply" the authority by specifying the Attorney General as the executive official to whom it delegated authority under SORNA.

Third, Congress also clearly delineated the boundaries of the authority it delegated to the Attorney General. Section 16913(d) delegates to the Attorney General a single, narrow decision: to determine SORNA's application to preenactment sex offenders. Under this delegation, "the Attorney General cannot do much more than simply determine whether or not SORNA applies to those individuals." *United States v. Guzman*, 591 F.3d 83, 93 (2nd Cir. 2010). This circumscribed question is further "constrained by the legislative determinations that Congress made in other sections of SORNA," including the provisions pronouncing which crimes are subject to SORNA, § 16911, where the offender must register, § 16913(a), the timeframe within which the offender must register, § 16913(b), the method of registration, § 16913(b)–(c), and the information

-11-

the offender must include in the registry, § 16914(a). *United States v. Cooper*, 750 F.3d 263, 272 (3d Cir.), *cert. denied,* 135 S. Ct. 209 (2014). Congress also explicitly outlined the elements of the failure-to-register crime in § 2250. The authority Congress delegated under § 16913(d) is therefore bounded by the limited nature of the retroactive determination itself and the guidance Congress provided in other SORNA provisions.

Accordingly, we hold that § 16913(d) meets the Supreme Court's intelligible principles test because Congress clearly delineated SORNA's general policy, the public agency to which Congress delegated its authority, and the boundaries of this delegation. *See Mistretta*, 488 U.S. 372–73.

Mr. Nichols asserts, however, that we should apply the more rigorous "meaningfully constrains" standard instead of the "intelligible principle" standard because § 16913(d) delegates Congress's authority to regulate a statute with criminal consequences. In so arguing, Mr. Nichols relies on *Touby v. United States*, in which the Supreme Court acknowledged the possibility that "something more than an 'intelligible principle' is required when Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions," but declined to resolve the issue because, even under a more stringent standard, the provision at issue in *Touby* "meaningfully constrains the Attorney General's discretion to define criminal conduct." 500 U.S. 160, 165–66 (1991). Mr. Nichols contends that this case is the appropriate vehicle to institute the more searching "meaningfully constrains" standard, and that § 16913(d) fails under that standard.

-12-

The Third Circuit recently confronted this issue in *Cooper*, 750 F.3d at 270–71. The *Cooper* court recognized the Supreme Court left open the question whether a heightened "meaningfully constrains" standard applies to Congress's delegation of authority involving statutes with criminal implications. *Id.* at 271. But as the Third Circuit further explained, the meaningful constraints standard "has been referenced in only a handful of cases, none of which set forth factors or a substantive analytical framework against which to assess whether a specific delegation satisfies the standard." *Id.* The Third Circuit therefore refused to invoke the meaningfully constrains standard "[u]ntil the Supreme Court gives us clear guidance to the contrary." *Id.* We likewise decline to abandon the well-settled "intelligible principle" standard for the undeveloped "meaningfully constrains" standard. And because Congress provided an intelligible principle to which the Attorney General must conform in exercising the authority delegated under § 16913(d), we join our sister circuits[2] in concluding that § 16913(d) does not violate the nondelegation doctrine.[3]

---

[2] *United States v. Cooper*, 750 F.3d 263, 271–72 (3d Cir.), *cert. denied,* 135 S. Ct. 209 (2014); *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014); *United States v. Sampsell*, 541 F. App'x 258, 259–60 (4th Cir. 2013) (unpublished) (per curiam); *United States v. Goodwin*, 717 F.3d 511, 516–17 (7th Cir. 2013); *United States v. Kuehl*, 706 F.3d 917, 919–20 (8th Cir. 2013); *United States v. Parks*, 698 F.3d 1, 7–8 (1st Cir. 2012); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *United States v. Guzman*, 591 F.3d 83, 92–93 (2nd Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 263–64 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1213 (11th Cir. 2009).

[3] We acknowledge the concern some federal judges have expressed with Congress's delegation of such an important question. *See Reynolds v. United States*, 132

Continued . . .

## IV. CONCLUSION

For these reasons, we AFFIRM Mr. Nichols's conviction for failure to register in violation of 18 U.S.C. § 2250(a).

_____

Cont.

S. Ct. 975, 986 (2012) (Scalia, J., dissenting) (opining that § 16913(d)'s delegation of authority to the Attorney General "sail[s] close to the wind with regard to the principle that legislative powers are nondelegable"); *United States v. Hinckley*, 550 F.3d 926, 948 (10th Cir. 2008) (Gorsuch, J., concurring) (applying principles of constitutional avoidance to prevent an interpretation that would allow the Attorney General to choose "willy nilly" between either of "two extremes" or anything in between in determining SORNA's application to preenactment offenders). Although we agree that Congress's delegation of this important decision is puzzling, *see Cooper*, 750 F.3d at 272, we conclude that it nonetheless passes constitutional muster.

14-3041, *United States v. Nichols*

**McKAY**, Circuit Judge, concurring.

I concur with the panel's opinion with regard to the nondelegation doctrine question. I also concur that, under these facts, our decision in *United States v. Murphy*, 664 F.3d 798 (10th Cir. 2011), binds us with regard to the application of SORNA, and compels this court to determine that Kansas remained a "jurisdiction involved" under the Act even after Mr. Nichols abandoned his residence there. I write separately to express disagreement with the majority in *Murphy*, agreement with the dissent in *Murphy* by Judge Lucero, and my belief that consideration of this case by the full en banc court would be appropriate.

Judge Lucero's interpretation of SORNA's registration requirements accords with that of the Eighth Circuit in *United States v. Lunsford*, 725 F.3d 859 (8th Cir. 2013). *Lunsford* held that an individual who abandons a residence in a jurisdiction covered by SORNA to move to a jurisdiction not covered by SORNA no longer resides in a "jurisdiction involved" under the Act and therefore has no obligation to register. *Id.* at 861. I am persuaded by this reading of SORNA's plain language, however, the majority opinion in *Murphy* currently controls this case, and I accordingly concur.