FILED
United States Court of Appeals
Tenth Circuit

December 23, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN DANIEL MURPHY,

Defendant-Appellant.

No. 10-4095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 1:08-CR-00102-TC-1)**

---

Scott K. Wilson, Assistant Federal Defender (Steven B. Killpack, Utah Federal Defender, with him on the briefs), Utah Federal Defender's Office, Salt Lake City, Utah, for Appellant.

Ishan K. Bhabha, Appellate Section, Criminal Division, United States Department of Justice, Washington, District of Columbia (Carlie Christensen, United States Attorney, and Karin Fojtik, Assistant United States Attorney, Salt Lake City, Utah, Lanny A. Breuer, Assistant Attorney General, Gregory D. Andres, Acting Deputy Assistant Attorney General, and Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, District of Columbia, on the brief), for Appellee.

---

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

The Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16911–29, requires a sex offender to register and keep the registration current in each state where he resides, works, or studies. Sex offenders who change their name, residence, employment, or student status, must appear in person in at least one "jurisdiction involved" to inform the state's authorities of the change.

In this appeal we must determine whether a sex offender violates SORNA by abandoning his residence and moving to a foreign country without notifying the authorities of the home state. We conclude he does. For SORNA purposes, a sex offender continues to reside in a state after a change in residence or employment, both of which trigger reporting obligations, even if the offender eventually leaves the state. Therefore, even if an offender abandons his current residence and job with the intention of moving out of the country, he must update his registration to reflect his new status.

We therefore AFFIRM.

## I. Background

Kevin Daniel Murphy is registered as a sex offender in Utah, having been convicted by Utah state courts of aggravated sexual assault and aggravated sexual abuse of a child. Several times since his conviction, he has signed forms acknowledging his duty to notify the authorities upon any change of residence. In 2007, he was paroled from state prison to the Bonneville Community Correction Center in Salt Lake City. While residing at Bonneville, Murphy was allowed to

work in the community on the condition of restrictive movement, meaning correctional officers transported him to and from his workplace each day.

Despite these precautions, Murphy fled Bonneville a few months after his arrival. Instead of reporting to his employer, he boarded a bus to California and then took a taxi into Mexico. He ended up in Belize, believing he could escape extradition under that country's laws. After living in Belize for six months under the name Dan Murray, Murphy was arrested for lacking proper documentation. Belize deported Murphy to the United States, where he was returned to Utah.

Murphy was subsequently charged with violating 18 U.S.C. § 2250 by "knowingly fail[ing] . . . to update a registration as required by [SORNA]." He waived the right to a jury trial. After a bench trial, the district court convicted Murphy of violating § 2250. The district court held,

> because Belize has no sex offender registry, Mr. Murphy had an obligation to update his registration in Utah, the last jurisdiction where he was registered. Section 2250(a) is clear: a sex offender who 'travels in interstate or foreign commerce' and knowingly fails to register or update a registration as required by SORNA violates the statute.

R., Vol. 2 at 297. Murphy then filed a motion for post-verdict judgment of acquittal, which the district court denied. The court sentenced Murphy to two years' imprisonment and a life term on supervised release. Murphy timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.  Discussion

Murphy contends he did not violate § 2250 because he had no obligation to update his registration after he left Utah.  Specifically, Murphy asserts that, after he moved to Belize, he no longer resided in a covered "jurisdiction," as defined by SORNA.  And because SORNA only requires a sex offender to update his registration in a jurisdiction where he lives, works, or studies, Murphy contends the statute no longer applied to him.  We agree in part.  Although SORNA does not require sex offenders living abroad to continually return to the United States to update their registrations, Murphy violated SORNA by failing to notify Utah of a change of status—specifically, his escape from Bonneville—that occurred while he was still residing in that state.

### A.  *The Sex Offender Registration and Notification Act*

SORNA specifies: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. . . ."  42 U.S.C. § 16913(a).  It further provides: "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. . . ."  *Id.* § 16913(c).  SORNA defines "jurisdiction" to include U.S. states and territories but not foreign nations.  *Id.* § 16911(10).

-4-

Finally, it defines "resides" to mean, "with respect to an individual, the location of the individual's home or other place where the individual habitually lives." *Id.* § 16911(13).

Murphy's appeal turns on the meaning of "jurisdiction where the offender resides," under § 16913(a), and "residence," under § 16913(c). Most fundamentally, it is important to understand that a "jurisdiction where the offender resides" and a "residence" are *two different concepts*. Identifying a jurisdiction involved implicates a different inquiry than deciding whether a reporting obligation has arisen. The "jurisdiction where the offender resides" is usually a U.S. state—the state where the individual keeps his home or habitually lives. In contrast, an offender's "residence" is a specific dwelling place—for example, a house, apartment, or even a homeless shelter where an offender habitually lives.[1] Both the relevant state jurisdiction and the sex offender's living

---

[1] SORNA uses the terms "resides" and "residence" in separate sections. The statute expressly uses the defined term "resides" to identify the relevant jurisdiction. Contrary to the dissent's suggestion, § 16913(c), which addresses changes in status, does not contain the word "resides"—only the word "residence," which is a noun rather than a verb. Although the statute does not ordain that we interpret "residence" in line with the definition of "resides," we nevertheless believe that under the most natural reading, a "residence" is a "home or other place where [an] individual habitually lives." § 16911(13). Accordingly, we read § 16913(a) as specifying that the category of jurisdictions involved includes the jurisdiction "[that is] the individual's home or place where the individual lives," and we interpret § 16913(c) as specifying that the relevant residence is the specific abode "[that is] the individual's home or other place where the individual lives." Thus, subsections (a) and (c) discuss two separate concepts that are defined in the same way by the same term.

place are important to the national registration system: the offender's jurisdiction is where he must keep his registration current, while the offender's residence is a specific piece of registry information, a change of which sparks a reporting duty. Under the logic of the statute, the same is also true for employment and student status. Thus, when a sex offender changes or quits a job, or when he finishes school, he has changed his status such that he has a reporting obligation to a jurisdiction involved. His reporting obligation does not depend on whether he remains unemployed, out of school, or leaves the country.

The logic of the statute leads to these conclusions for three reasons. First, the statutory language naturally supports the conclusion that abandoning one's living place constitutes a change in residence under SORNA. When someone changes residences—whether by leaving his home, moving into a new dwelling, becoming homeless, or other means—he has a reporting obligation. So if a Utahn is evicted from his apartment and becomes homeless, he must report the change—even if he has yet to establish a new residence. In fact, § 16913(a) does not say that a sex offender must register in a jurisdiction only if he maintains an unchanging *residence*.[2] Rather, the provision more broadly says that when an

---

[2] As the Eighth Circuit noted in *United States v. Voice*, 622 F.3d 870, 875 (8th Cir. 2010), SORNA provides a flexible definition determining a sex offender's residence. The "place where the individual habitually lives" can vary in specificity depending on the individual. Thus, SORNA permits a telescoping approach that provides as much detail to the state authorities as can be reasonably given. For many individuals, it will be a specific residential address. For most,
(continued...)

offender changes his residence, he must register in the *jurisdiction where he resides*—which of course exists regardless of whether an offender has established a fixed dwelling.[3]

---

[2](...continued)
an individual's intent will answer the question of "where do you reside?" If an individual divides his time among two or three locations, then they all can constitute places where he habitually lives. *See id.* And if an individual remains itinerant within a given area—for example, a neighborhood in the city of Cheyenne—then his place of residence should be those areas.

In other words, a peripatetic must keep his registration current with as much detail as to his general location as possible. In this we agree with the Attorney General's SORNA guidelines that require transient or homeless sex offenders to provide "some more or less specific description . . . concerning the place or places where such sex offender habitually lives—e.g., information about a certain part of a city that is the sex offender's habitual locale, a park, or spot on the street . . . ." *Id.* (quoting National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,055 (July 2, 2008)). So if an individual moves from Albany to Sacramento, he can satisfy his New York reporting obligation by registering in California within three days of leaving Albany—even if his new residential address is not yet finalized. Of course, once he acquires a particular abode in Sacramento, he must again update his California registration.

[3] The dissent interprets the statutory language to mean that when an offender abandons a residence, no reporting obligation arises until the sex offender establishes a new residence. But the dissent's interpretation is an unnatural reading of the statute and preordains the conclusion that a transient sex offender does not reside in *any* state, even if he remains in the same state for years.

The dissent's interpretation is also contrary to other courts' holdings regarding venue. *In United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 483 (2010) defendant did not establish a new residence in his home state, New York, but instead left the jurisdiction. Nonetheless, by affirming his conviction in New York, the Second Circuit considered that state to be a relevant jurisdiction under SORNA, even though the defendant had not established a new residence there. Similarly, the Eighth Circuit has held that, when a sex offender moves from one state to another without updating his registration, venue is proper in both jurisdictions, even though the

(continued...)

-7-

At least two other circuits agree with our conclusion that permanently abandoning a dwelling place is a change in residence under SORNA and must be reported to a jurisdiction involved. For example, in *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 483 (2010), the Second Circuit held SORNA requires a sex offender to update his registration in person when he permanently leaves his residence, even if he has not yet established a new residence. The defendant in that case, who was registered as a sex offender in New York, traveled to his mother's residence in North Carolina without updating his registration. *Id.* at 171. At trial, the defendant contended an address does not "change" until a new residence is established. *Id.* at 173. But the court disagreed, holding that permanently terminating a New York residence and moving to North Carolina constituted a change in address, and the defendant was required to update the New York registry. *Id.* at 174.

The Eighth Circuit endorsed the Second Circuit's interpretation in *United States v. Voice*, 622 F.3d 870, 875 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1058 (2011). There, the defendant had left his residence at a halfway house in Sioux Falls, spent ten days living with an acquaintance in Fort Thomson, and then lived

[3](...continued)
defendant no longer resides in the former state. *United States v. Howell*, 552 F.3d 709, 717–18 (8th Cir. 2009). Other federal courts reached the same conclusion. *See, e.g.*, *United States v. Thompson*, 595 F. Supp. 2d 143, 149 (D. Me. 2009); *United States v. Cochran*, No. CR-08-18-RAW, 2008 WL 2185427, *3 (E.D. Okla. May 23, 2008).

for some time at a nearby, abandoned comfort station, all within the state of South Dakota. *Id.* at 873. The court determined sufficient evidence existed for a reasonable jury to find the defendant failed to register a change of residence when he "habitually lived" in one or more of those locations. *Id.* at 874–75. The court also "reject[ed] the suggestion that a savvy sex offender can move to a different city and avoid having to update his SORNA registration by sleeping in a different shelter or other location every night." *Id.* at 875.

*Van Buren* and *Voice* were correctly decided. The permanent abandonment of an abode constitutes a change of residence, regardless of whether a new residence has been formally adopted. Moreover, this statutory construction aligns with legislative intent, because Congress's goal in enacting SORNA was to ensure that sex offenders could not avoid registration requirements by moving out of state. *See Van Buren*, 599 F.3d at 174–75.

A second conclusion also follows from the statutory language. When an offender leaves a residence in a state, and then leaves the state entirely, that state remains a jurisdiction involved. Even if a sex offender plans on leaving a state permanently, his reporting obligation to a jurisdiction involved remains. Put differently, because the issue of identifying a jurisdiction involved is a different determination than the issue of whether a reporting obligation has arisen, the intentional abandonment of a home does not in itself change the "jurisdiction where the offender resides," so long as the offender was still a resident of the

state when the abandonment occurred. Indeed, although intent can be a powerful indicator of whether the defendant has permanently changed an address or left a jurisdiction, insofar as it makes it more or less likely the defendant will actually return, it does not alter *when* the change occurred. If a sex offender was still a resident of the state when a reporting obligation arose—because of a change in residence, employment, or student status—that state remains a jurisdiction involved for purposes of SORNA.

The third conclusion flowing from SORNA is that a reporting obligation does not disappear simply because an individual manages to relocate to a non-SORNA jurisdiction before the three-day deadline for updating a registration has passed. Needless to say, a legal obligation under federal law does not expire simply because one has managed to leave the country before the date on which noncompliance is punishable. So even though SORNA grants a three-day grace period, the obligation to update a registration attaches to the sex offender as soon as a change in status occurs.

We note that when several reporting obligations occur within the same three-day period, SORNA permits a sex offender to satisfy all his obligations by updating his registration in just one state that is an involved jurisdiction. Thus, registering in a new SORNA jurisdiction can satisfy the obligation of registering in a former state, so long as it occurs within three days of terminating the prior residence. *See* § 16913(c). But if it takes more than three days to relocate to a

new home or job, then the sex offender must register twice—within three days of abandoning his former residence, and within three days of establishing the new one.

And, of course, although SORNA gives a sex offender the ability to satisfy his registration requirement in one state by updating his registration in another state, he cannot do so by registering in a foreign country, because it is not a SORNA jurisdiction. Thus, a sex offender relocating abroad must satisfy his reporting obligations in a jurisdiction involved.

In sum, it is plain that the definitions in § 16911 and the registration obligation in § 16913 require a sex offender, upon changing his residence, to update his registration in a jurisdiction involved—in this case, where the offender has a home or habitually lives or works—even if he did not establish a new residence in a SORNA jurisdiction. To put it more directly, when a sex offender changes residences, jobs, or student status, a reporting obligation arises in a state where he lives, works, or is in school.

### B. Murphy's Conviction

The record demonstrates Murphy knowingly violated SORNA by failing to update his registration. Although he had not yet established a new residence, Murphy changed his residence for SORNA purposes when he permanently left Bonneville. And although he was no longer residing at a particular location, Murphy's reporting obligation did not end just because he left the state. As a

result, a legal obligation to update his registration attached when he left Bonneville, while he was still in Utah, and not when he arrived in Belize.

Because Murphy abandoned his Bonneville residence on October 8, he had until October 11 to appear before the Utah authorities to notify them of the change. If Murphy had moved to another SORNA jurisdiction, he could have satisfied this obligation by registering in the new state before that deadline. *See* § 16913(c). But Murphy could not defeat his Utah reporting obligation by crossing into Mexico before October 11. Although Murphy was no longer living in Utah when his failure to register became punishable, Utah remained a "jurisdiction involved" under SORNA because it was his current jurisdiction when the reporting obligation arose. *See United States v. Howell*, 552 F.3d 709, 717–18 (8th Cir. 2009). And because Murphy was aware of his reporting obligation—indeed, he traveled to Belize under the mistaken impression that he would not be extradited—he violated 18 U.S.C. § 2250 by knowingly failing to update his registration.

In summary, as Murphy recognizes, "when a sex offender moves . . . he must appear in one of the jurisdictions where he is a resident . . . and update his information." Aplt. Br. at 5–6. When Murphy left Bonneville, he changed his residence but not the jurisdiction where he resided. Therefore, he was required to update his information with Utah within three days of the change of residence.

Although we affirm Murphy's conviction, we clarify that SORNA does not create new reporting obligations for sex offenders living abroad. When a reporting obligation arises, SORNA only requires a sex offender to update his registration in the jurisdiction where he lives, works, or studies. Utah was a jurisdiction involved for Murphy because he was still habitually living there when he abandoned his Bonneville residence. In other words, Utah was a "present-tense" jurisdiction (i.e., a jurisdiction that *is* involved, not a jurisdiction that *was* involved) when Murphy's reporting obligation arose.

In contrast, if a sex offender is already living abroad when a change of employment or residence occurs, SORNA does not require the offender to update the registry of a prior SORNA jurisdiction. Thus, Murphy was not obligated to notify Utah of changes that occurred after he left the state, such as where he lived or worked in Belize. And SORNA certainly does not require sex offenders living abroad to continually return to the United States to update their registration in person. The natural reading of "jurisdiction involved" restricts the term to jurisdictions that were currently involved when the change triggering the reporting obligation occurred.

### III. Conclusion

In summary, we uphold Murphy's conviction because he knowingly violated SORNA by not updating his Utah registration regarding his change of residence.

-13-

AFFIRMED.

10-4095, United States v. Murphy

**LUCERO**, J., dissenting.

In the early morning hours of October 8, 2007, Kevin Murphy arranged for a ride from the Bonneville Halfway House in Salt Lake County, Utah, to his place of employment. An officer drove Murphy to his workplace, but Murphy did not report to work. Instead, he boarded a bus for San Diego. The day after he left the halfway house, Murphy took a taxi from San Diego into Mexico. Two weeks later he settled in Belize.

These facts are not in dispute, but their legal implication is. Was Utah a "jurisdiction involved" under the Sex Offender Registration and Notification Act ("SORNA") after Murphy abandoned the halfway house? SORNA lists three jurisdictions that qualify: the "jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," 42 U.S.C. § 16913(a). This case concerns only the first prong—residence. And "resides" is a defined term referring to "the location of the individual's home or other place where the individual habitually lives." § 16911(13).

After absconding, Murphy was present in Utah for mere hours. He spent that time on a moving bus headed for the state line. In order to affirm Murphy's conviction, the majority necessarily must accept an absurd premise: that a moving bus constitutes a "home or other place" in which Murphy "habitually live[d]" during the time it takes to travel from Salt Lake County to the state

line—by my estimation, five hours or so.  As a matter of statutory interpretation, and of common sense, such contortion is indefensible.  I respectfully dissent.

# I

SORNA requires a sex offender to keep his registration current "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  § 16913(a).  Every time an offender experiences a "change of name, residence, employment, or student status," he must "appear in person in at least 1 jurisdiction involved pursuant to subsection (a)" to notify that jurisdiction.  § 16913(c).

Murphy's move, however, reveals a wrinkle in SORNA.  "Jurisdiction" is defined by statute to include states and certain territories and Indian reservations, but not foreign countries.  See § 16911(10).  When a sex offender moves from Utah to Colorado, it is simple enough for the offender to report his new address to Colorado.  In that scenario, Colorado is the "jurisdiction where the offender resides," § 16913(a), and thus a "jurisdiction involved pursuant to subsection (a)," § 16913(c).  But Murphy moved from Utah to Belize, and Belize is statutorily excluded from the definition of "jurisdiction."  See § 16911(10).  Accordingly, Murphy could not comply with SORNA by reporting his new address to Belizean authorities.

Nor did Murphy have an obligation to report to Utah.  The majority

-2-

concludes that Murphy ceased to reside at the Bonneville Halfway House when he left with no intention of returning. (See Majority Op. 11.) That conclusion is necessary to trigger Murphy's reporting obligation, because it is the "change of . . . residence" Murphy was required to report. § 16913(c). But if the halfway house was no longer Murphy's residence, then Utah was no longer the "jurisdiction where the offender resides," § 16913(a), because the state would not contain any "home or other place where [Murphy] habitually lives," § 16911(13). Accordingly, Utah would not qualify as a "jurisdiction involved pursuant to subsection (a)," § 16913(c).

There was no point in time at which Murphy had a change in residence to report <u>and</u> continued to reside in Utah. Accordingly, Murphy cannot be convicted for failing to update his registration with the State of Utah.

To escape this conclusion, the majority misinterprets the statute in two respects. First, it impermissibly rejects the statutory definition of "resides," and instead applies the ordinary meaning of that term. In dealing with a defined term, "we should look to the statutory definition of the term and begin with the ordinary meaning of that language rather than with the 'ordinary meaning' of the term that Congress thought it advisable to define." <u>Hackwell v. United States</u>, 491 F.3d 1229, 1240 (10th Cir. 2007) (quotation omitted). The majority concludes that "the intentional abandonment of a home does not in itself change the 'jurisdiction where the offender resides,' so long as the offender was still a resident of the

-3-

state when the abandonment occurred." (Majority Op. 9-10.) But this assertion merely begs the question. If Utah does not contain a "home or other place where [Murphy] habitually lives," § 16911(13), then why is Murphy a "resident" of Utah under the statutory definition? He certainly might qualify as a resident of the state as the word "resident" is normally used, but we must adhere to the definition provided by Congress: An offender resides at "the location of the individual's home or other place where the individual habitually lives." § 16911(13). Because Murphy did not have a habitual home in Utah after he abandoned the halfway house, Utah was not a jurisdiction involved under SORNA.

Second, the majority opinion avoids a plain text reading of the statute by giving two different meanings to the defined term "resides." (See Majority Op. 5 n.1 ("[S]ubsections (a) and (c) [of § 16913] discuss two separate concepts that are defined in the same way by the same term.").) According to the majority, Murphy "changed his residence but not the jurisdiction where he resided." (Id. at 12.) In other words, he continued to "reside" in Utah despite not having a habitual residence in that state, merely because he was present in Utah. The statute "permits a telescoping approach," the majority tells us, under which the single defined term "resides" apparently might refer to a home or an entire state. (Id. at 6 n.2.)

"A core tenet of statutory construction is that identical words used in different parts of the same act are intended to have the same meaning." Wyodak

-4-

Res. Dev. Corp. v. United States, 637 F.3d 1127, 1131 (10th Cir. 2011) (quotation omitted); see also Brown v. Gardner, 513 U.S. 115, 118 (1994) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute . . . ." (citations omitted)). The majority explicitly violates this canon by giving inconsistent definitions to "resides" and "residence." Congress used the same root word to define the triggering of an offender's reporting requirement—"change of . . . residence," § 16913(c)—and the jurisdiction to which an offender must report—"jurisdiction where the offender resides," § 16913(a). Sauce for the goose is sauce for the gander. If Murphy's reporting requirement arose because he experienced a "change of . . . residence," § 16913(c), when he left the Bonneville Halfway House, the majority cannot fairly claim in the same breath that Murphy continued to reside in the state of Utah. That is, unless the majority concludes that Murphy established a new habitual residence on the bus during his brief ride to the border—a risible interpretation of the facts before us.

Nor do the cases cited by the majority support its position. In United States v. Voice, 622 F.3d 870 (8th Cir. 2010), the defendant absconded from a halfway house, and over the following two months spent ten days living in a "a conventional dwelling with an address" and some period of time sleeping in an abandoned comfort station. Id. at 873-74. The defendant had been eating and showering at a trailer located across the street from the comfort station, and

police found the defendant's belongings located inside the abandoned building. Id. at 873. The Eighth Circuit held that this evidence permitted a jury to conclude that the defendant established a habitual residence after leaving the halfway house. Id. at 874-75. However, the court declined to reach the issue of "whether some travelers are so transient that a jury could not reasonably find a change of residence during extended travels." Id. at 874.

In United States v. Van Buren, 599 F.3d 170 (2d Cir. 2010), the defendant left his home in New York and traveled to his mother's home in North Carolina where he stayed until he was arrested fifteen days after leaving New York. Id. at 171. The jury instructions referenced the defendant's obligation to "notify the registry" and noted that updated information "must be provided to either the state where the sex offender resides, works, or is a student." Id. at 173. Under that instruction, Murphy was not required to report to Utah because he did not reside in that state once a reporting obligation arose.

Finally, the venue cases cited by the majority merely stand for the proposition that the crime of failing to update a registry begins in the state from which a sex offender moves. See United States v. Howell, 552 F.3d 709, 717-18 (8th Cir.), cert. denied, 129 S. Ct. 2812 (2009); United States v. Thompson, 595 F. Supp. 2d 143, 148-150 (D. Me. 2009); United States v. Cochran, 2008 WL 2185427, at *2-3 (E.D. Okla. May 23, 2008) (unpublished). This is so because the federal venue statute provides that when a crime is "begun in one district and

completed in another, or committed in more than one district, [it] may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237.

## II

Our duty as a court is to apply SORNA's plain language and leave it to Congress to change the statute if it desires to do so. Prior to October 8, 2007, Murphy's residence was the Bonneville Halfway House. Between Murphy's desertion of the halfway house that morning and his entry into Mexico the following day, there was no "home or other place where [he] habitually live[d]." § 16911(13). Assuming Murphy's abandonment of the halfway house was a change in residence, Murphy did not establish a new residence before leaving the country. A moving bus traveling from Salt Lake County to San Diego is not a "home or other place where [an] individual habitually lives," § 16911(13), under any reasonable interpretation of that phrase. And because Murphy did not "reside" in Utah following his change in residence, Utah was not a "jurisdiction involved," § 16913(c), to which Murphy was required to report. On this basis, I would reverse his conviction.

As a matter of policy, the majority's version of SORNA might make perfect sense. But it is not the version that Congress created. I share the majority's unspoken concern that Congress drafted SORNA with a loophole. But it is not our office to rewrite the statute to remedy Congress' perceived failing. Our task

is to apply the statute as written.

Murphy is a sex criminal who was placed on the sex offender registry because of a pair of unspeakably heinous crimes. But he is not appealing those convictions—for which he received potential life sentences in state court. Instead, Murphy stands before us convicted for his failure to submit a form to the State of Utah. The plain text of the statute did not require him to file that form, and thus his conviction should be reversed.