# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40370

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LARRY WAYNE THOMPSON,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 21, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Larry Wayne Thompson appeals his conviction for failure to register as a sex offender. We affirm.

I.

The relevant facts, viewed in the light most favorable to the jury verdict,[1] are as follows:

---

[1] *See United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012) ("All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established [the defendant's] guilt beyond a reasonable doubt." (citing *United States v. Peñaloza-Duarte*, 473 F.3d 575, 579 (5th Cir. 2006))).

No. 15-40370

In 2000, Thompson pleaded guilty to eight counts of possession of child pornography in federal court in the Northern District of Oklahoma. The court sentenced Thompson to a term of imprisonment. The court also required Thompson to register as a sex offender.

After completing his sentence, Thompson registered as a sex offender in Oklahoma. However, in 2007, Thompson moved from Oklahoma to Corpus Christi, Texas, without updating his sex offender registration. Accordingly, a warrant issued for Thompson's arrest.

The United States located Thompson in Mexico, returned him to the United States, and indicted him for failing to update his registration. Thompson again pleaded guilty and served another term of imprisonment. Once again, the court required Thompson, as a condition of his sentence, to "register with the sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer."

After completing his second prison sentence, Thompson moved into an apartment complex in Corpus Christi with a roommate named Matthew Hunt. Thompson registered as a sex offender in Corpus Christi.

In the summer of 2013, Hunt began making plans to move from Corpus Christi to McKinney, Texas, where his son lived. Thompson "decided it would be best for him to come with" Hunt. Thus, after two or three months of planning, Thompson and Hunt decided to leave Corpus Christi in September 2013.

Thompson rented a U-Haul truck in his own name to accomplish the move. Notably, Thompson did not purchase a round-trip rental; instead, he purchased a one-way rental from Corpus Christi to McKinney.

Thompson and Hunt removed the majority of their belongings from their Corpus Christi apartment and loaded them into the U-Haul truck. They then

2

No. 15-40370

left their apartment keys in the complex's office, drove away, and never returned to the complex. Neither Thompson nor Hunt left a forwarding address with the apartment complex. The complex eventually leased Thompson and Hunt's former unit to new tenant.

Crucially, Thompson never updated his sex offender registration after leaving Corpus Christi or arriving in McKinney.

Thompson and Hunt applied for an apartment in McKinney, but when they arrived in McKinney the apartment was unavailable. Throughout the month of September, Thompson and Hunt alternated between residing at a hotel in McKinney and camping in various McKinney parks.

A few days after Thompson and Hunt arrived in McKinney, an administrative assistant at Thompson's sex offender treatment center in Corpus Christi called Thompson to remind him that he had an upcoming counseling appointment. Thompson replied that "he was not interested" in attending the therapy appointment and that "he was not going to appear." Thompson then hung up the phone. As a result of Thompson's refusal to comply with the conditions of his sentence, a warrant issued for his arrest.

Several days later, the City of McKinney's Parks Department contacted the city's police department to report that a U-Haul truck was illegally "parked off of the pavement on the grass" in a park on the city's north side. A McKinney police officer arrived at the scene and encountered Thompson sitting at a nearby picnic table. The officer ran a background check on Thompson and discovered that he had previously been convicted of a child pornography offense in Oklahoma and that he had an outstanding warrant for his arrest. Thompson told the officer that he had not updated his registration after leaving Corpus Christi.

A federal grand jury in the Eastern District of Texas issued a one-count indictment charging Thompson with failure to register as a sex offender as

3

No. 15-40370

required by the Sex Offender Registration & Notification Act ("SORNA"). The case proceeded to trial and the jury found Thompson guilty. Thompson now appeals.

## II.

SORNA's registration provision, 42 U.S.C. § 16913, requires a convicted sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."[2] "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."[3]

SORNA also contains a separate penalty provision, 18 U.S.C. § 2250(a), which provides:

Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

---

[2] 42 U.S.C. § 16913(a).
[3] *Id.* § 16913(c).

4

No. 15-40370

shall be fined under this title or imprisoned not more than 10 years, or both.

Thus, "a sex offender whose underlying conviction was obtained pursuant to *state* law and who never crosses state lines, international borders, or the boundaries of Indian country, cannot be criminally liable for failure to comply with SORNA."[4] By contrast, "[o]ne convicted of *federal* sex offenses is liable for his knowing failure to register or update his registration *regardless* of whether he travels in interstate or foreign commerce."[5]

Thompson previously committed a sex offense under federal, not state, law.[6] He did not travel in interstate commerce; instead, he failed to update his registration after relocating from one city in Texas to a different city in the same State. Thus, § 2250(a)(2)(A), but not § 2250(a)(2)(B), criminalizes Thompson's failure to update his registration after his intrastate relocation.

### III.

Thompson challenges his conviction on several grounds. For the following reasons, we reject all of Thompson's challenges.

### A.

Thompson first raises an as-applied constitutional challenge to SORNA. He claims that the Necessary and Proper Clause of the U.S. Constitution[7] does not authorize Congress to criminalize his "purely intrastate conduct" – namely,

---

[4] *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010) (emphasis added). *Accord* 18 U.S.C. § 2250(a)(2)(B).

[5] *United States v. Sanders*, 622 F.3d 779, 781-82 (7th Cir. 2010) (emphasis added) (citing 18 U.S.C. § 2250(a)(2)(A)).

[6] *See* 18 U.S.C. § 2252(a)(5)(B) & (b)(2) (Thompson's offense of conviction).

[7] U.S. CONST. art. I, § 8, cl. 18.

relocating from one city in Texas to another city in Texas without updating his sex offender registration. According to Thompson, Congress may only criminalize a sex offender's intrastate conduct if the defendant either (1) "served in the armed forces" or (2) committed an offense on "federal property." Thompson does not fall into either of those categories. Thus, claims Thompson, the district court should have dismissed the indictment. Our standard of review is *de novo*.[8]

Thompson's constitutional challenge is meritless. The Courts of Appeals have repeatedly upheld SORNA's registration and penalty provisions under the Necessary and Proper Clause,[9] even when the defendant neither served in the military, nor committed an offense or lived on federal property, nor moved within interstate or foreign commerce.[10]

The Tenth Circuit's decision in *United States v. Brune* is particularly illustrative. Brune was previously convicted for possessing child pornography in violation of 18 U.S.C. § 2252 – just like Thompson.[11] As far as the Tenth Circuit's opinion reveals, Brune never served in the military, did not commit a

---

[8] *United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009) ("We review de novo the denial of the motion to dismiss the indictment and the underlying constitutional claim.").

[9] *See United States v. Kebodeaux*, 133 S. Ct. 2496, 2499-2505 (2013); *United States v. Brune*, 767 F.3d 1009, 1013-17 (10th Cir.), *cert. denied*, 135 S. Ct. 1469 (Feb. 23, 2015); *United States v. Coppock*, 765 F.3d 921, 922-25 (8th Cir.), *cert. denied*, 135 S. Ct. 1003 (Jan. 12, 2015); *United States v. Anderson*, 771 F.3d 1064 (8th Cir.), *cert. denied*, 135 S. Ct. 1575 (Mar. 23, 2015) (holding that SORNA's registration requirement is constitutional under the Necessary and Proper Clause "even if the constitutionality of § 16913 is doubtful under the Commerce Clause alone"); *United States v. Brunner*, 726 F.3d 299, 301-04 (2d Cir. 2013); *United States v. Reyes*, 550 F. App'x 201, 201-02 (5th Cir. 2013) (per curiam); *United States v. Elk Shoulder*, 738 F.3d 948, 949-60 (9th Cir. 2013); *United States v. Carel*, 668 F.3d 1211, 1212-24 (10th Cir. 2011); *United States v. Yelloweagle*, 643 F.3d 1275, 1276-89 (10th Cir. 2011); *United States v. Whaley*, 577 F.3d 254, 260 (5th Cir. 2009) ("[T]o the extent that § 16913 applies to sex offenders remaining intrastate, the Necessary and Proper Clause provides Congress with the necessary authority.").

[10] *See Brune*, 767 F.3d at 1013-17.

[11] *Id.* at 1014.

sex offense on federal property, and continually resided within the boundaries of a single State – just like Thompson.[12] Brune pleaded guilty to failure to register as a sex offender under SORNA.[13] On appeal, Brune challenged SORNA's constitutionality.

The *Brune* court ruled that "SORNA's registration requirements cannot be constitutionally challenged under the Necessary and Proper Clause."[14] "[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power," such as the Commerce Clause.[15] Here, the child pornography statute under which both Thompson and Brune were originally convicted

> plainly withstands constitutional scrutiny as an exercise of congressional authority under the Commerce Clause to regulate the interstate trafficking of child pornography. And because the constitutionality of the underlying statute cannot be reasonably questioned, SORNA's registration requirements are a limited and rational extension of congressional power, as permitted by the Necessary and Proper Clause.[16]

Thus, the Necessary and Proper Clause grants Congress the authority to criminalize Thompson's failure to update his registration even though he never served in the military, committed an offense on federal property, or relocated to a different state.

---

[12] *See id.*

[13] *Id.*

[14] *Id.* at 1017 n.2.

[15] *United States v. Comstock*, 560 U.S. 126, 134 (2010) (citing *Sabri v. United States*, 541 U.S. 600, 605 (2004)).

[16] *Brune*, 767 F.3d at 1017 (citations omitted).

No. 15-40370

Thompson's argument to the contrary is based almost entirely on Chief Justice Roberts's concurring opinion in *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013). In *Kebodeaux*, a military servicemember had previously been court-martialed and imprisoned for committing a federal sex offense in violation of the Uniform Code of Military Justice.[17] Like Thompson, Kebodeaux subsequently violated SORNA by failing to update his sex offender registration after moving from one city in Texas to a different city in the same State.[18] Kebodeaux challenged SORNA's registration provisions on constitutional grounds. A five-Justice majority upheld the challenged provisions under the Necessary and Proper Clause and the Military Regulation Clause.[19] The Chief Justice concurred in the judgment but did not join the majority opinion. The Chief Justice reasoned that, because Congress does not possess a general "federal police power,"[20] the mere fact that the defendant had previously committed a federal sex offense "d[id] not give Congress a freestanding, independent, and perpetual interest in protecting the public from the convict's purely intrastate conduct."[21] Nevertheless, the Chief Justice voted to uphold the defendant's conviction because Congress possessed "the power to regulate the conduct of members of the military by imposing consequences for their violations of military law."[22]

No other Justice joined the Chief Justice's concurrence.[23] Nor was the Chief Justice's concurrence necessary to obtain a fifth vote in favor of the

---

[17] *Kebodeaux*, 133 S. Ct. at 2499, 2502.

[18] *Id.* at 2500.

[19] *Id.* at 2499-2505 (Breyer, J., for the Court).

[20] *Id.* at 2507 (Roberts, C.J., concurring in the judgment).

[21] *Id.* (Roberts, C.J., concurring in the judgment).

[22] *Id.* at 2506 (Roberts, C.J., concurring in the judgment).

[23] Justice Alito filed a separate concurrence that echoed some of the Chief Justice's concerns, but he did not join the Chief Justice's opinion. *See id.* at 2508-09 (Alito, J., concurring in the judgment).

majority's result.[24] As a result, "the majority opinion binds us, and its analysis does not confine SORNA's constitutionality to applications involving only the Military Regulation Clause. Nothing in the majority opinion isolates the Military Regulation Clause as the sole foundation for congressional authority in support of SORNA."[25] Thus, SORNA is constitutional under the Necessary and Proper Clause, and Thompson's conviction may stand even though he never served in the military.[26]

## B.

Thompson next contends that the evidence the Government presented at trial was insufficient to sustain his conviction. Thompson believes that a sex offender need not update his registration if he "merely travels for an extended period of time without establishing either a new home or a new place to habitually live." Because he and Hunt never moved into a new apartment in McKinney, but instead slept at various hotels and campgrounds around the McKinney area, Thompson argues that he never exhibited a "settled purpose" to "habitual[ly] reside[]" in McKinney.

Because Thompson preserved this challenge for appeal by orally moving for a judgment of acquittal at trial, our standard of review is *de novo*.[27] "All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established [Thompson's] guilt beyond a reasonable doubt."[28]

---

[24] Five Justices joined the majority opinion in *Kebodeaux*: Breyer, Kennedy, Ginsburg, Sotomayor, and Kagan, JJ.

[25] *Brune*, 767 F.3d at 1016-17 (citations omitted).

[26] *See id.* at 1013-17.

[27] *Harris*, 666 F.3d at 907 (citing *Peñaloza-Duarte*, 473 F.3d at 579).

[28] *Id.* (citing *Peñaloza-Duarte*, 473 F.3d at 579).

No. 15-40370

Thompson's argument that an itinerant sex offender may wait to update his registration until he establishes a new residence is meritless. To the contrary, "SORNA requires a convicted sex offender to update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence."[29] "[A] savvy sex offender" may not "avoid having to update his SORNA registration" by "mov[ing] to a different city" and then "sleeping in a different shelter or other location every night."[30] "[I]f an individual remains itinerant within a given area," such as a neighborhood in a particular city, "then his place of residence should be those areas. In other words, a peripatetic must keep his registration current with as much detail as to his general location as possible."[31] Thus, the fact that Thompson stayed in hotels and parks instead of establishing a single permanent residence in McKinney does not relieve him of his registration obligations under SORNA.[32]

In an attempt to avoid this result, Thompson maintains that he never actually abandoned his residence in Corpus Christi. He instead asserts that he was "merely travel[ing] for an extended period of time." However, at trial, the Government introduced the following evidence that Thompson did indeed leave Corpus Christi with no intention to return:

---

[29] *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010). *Accord United States v. Murphy*, 664 F.3d 798, 802 (10th Cir. 2011) ("The permanent abandonment of an abode constitutes a change of residence, regardless of whether a new residence has been formally adopted.").

[30] *United States v. Voice*, 622 F.3d 870, 875 (8th Cir. 2010). *Accord Murphy*, 664 F.3d at 802.

[31] *Murphy*, 664 F.3d at 801 n.2.

[32] *Cf. United States v. Bruffy*, 466 F. App'x 239, 244 (4th Cir. 2012) ("To the exclusion of any other location, Bruffy habitually lived in the Belle Haven area of Fairfax County, Virginia. Thus, regardless of the ultimate destination that Bruffy may have contemplated when leaving Florida, a transient person of ordinary intelligence would have recognized after four weeks of living in and around the Belle Haven area of Fairfax County, Virginia, that he was habitually living there and was required by SORNA to update his registration information.").

No. 15-40370

- Thompson and Hunt jointly formulated a plan to move to McKinney.

- Thompson and Hunt removed the majority of their belongings from their Corpus Christi apartment and transported them to McKinney in the U-Haul truck.

- Thompson did not purchase a round-trip rental for the U-Haul; instead, he purchased a one-way rental from Corpus Christi to McKinney in his own name.

- Thompson and Hunt left their apartment keys in the Corpus Christi complex's office and never returned to the complex.

- Thompson and Hunt stayed in McKinney for several weeks without ever returning to Corpus Christi.

- Thompson and Hunt arranged their furniture in the U-Haul "almost like a living room kind of where you could hang out in the back of the truck."

Thus, viewing the evidence in the light most favorable to the verdict, the jury could reasonably find beyond a reasonable doubt that Thompson abandoned his Corpus Christi residence to habitually live in McKinney.[33] The jury could likewise reject Thompson's assertion that he was merely temporarily traveling.[34] Thus, the evidence was sufficient to convict Thompson.

## C.

Thompson also argues that the district court should have suppressed certain evidence introduced at trial. As we noted above, this is not the first time Thompson has been convicted for failing to register as a sex offender

---

[33] *See Harris*, 666 F.3d at 907 ("All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established [the defendant's] guilt beyond a reasonable doubt." (citing *Peñaloza-Duarte*, 473 F.3d at 579)).

[34] *See United States v. Forster*, 549 F. App'x 757, 761-63 (10th Cir. 2013) (rejecting similar argument that the defendant was merely "traveling" without abandoning his residence).

11

under SORNA. Thompson previously failed to update his registration when he moved from Oklahoma to Texas in 2011. A warrant issued for his arrest, the Government located him in Mexico, and the Government brought him back to the United States. Thompson ultimately pleaded guilty and served a term of imprisonment for failing to update his registration.

Deputy U.S. Marshal Alfredo Lujan interviewed Thompson immediately after he arrived in the United States from Mexico (the "2011 Interview"). Over Thompson's objection, the district court permitted Lujan to testify about the 2011 Interview at trial. The objected-to portion of the exchange between Deputy Lujan and Thompson follows:

> Q.    [Did you] talk to the defendant about requirements for registration of sex offenders in Texas?
>
> A.    We did.
>
> Q.    And what did you explain to him as far as the duties for a sex offender to register in Texas?
>
> A.    I explained to him since he was traveling from the State of Oklahoma to the State of Texas, state law requires – gives him ten days to notify law enforcement about his new residency for him being within the State of Texas.

Thompson argues that the district court should have excluded this testimony under the *Miranda* doctrine. According to Thompson, (1) Lujan failed to cease interrogation after Thompson "repeatedly requested counsel" during the 2011 Interview; (2) Lujan "tricke[d]" Thompson into signing a "'consent form' immediately after the agent said it was an opt-out form;" and (3) "[t]his trickery is augmented by the fact that Thompson was 73 years old and had just gotten off an airplane in handcuffs after having been extradited from Mexico days

earlier and in transit ever since." Thompson asserts that Lujan's testimony prejudiced his "lack of knowledge" defense at trial:

> Thompson's defense was that he was unaware that he had to register under SORNA even if his ultimate destination and corresponding new residence were still uncertain. Agent Lujan's testimony about having conveyed information imparting this knowledge (in a situation no less than a conversation expressly described to the jury as "Mirandized") was fatal to Thompson's defense.[35]

"When we review a district court's denial of a motion to suppress, we view the facts in the light most favorable to the prevailing party, accepting the district court's factual findings unless clearly erroneous and considering all questions of law de novo."[36]

The testimony to which Thompson objects is not a testimonial statement of the accused obtained during the course of a custodial interrogation. We therefore doubt that the *Miranda* doctrine applies to Deputy Lujan's statements to Thompson.[37] But even assuming *arguendo* that the *Miranda* doctrine does apply to Deputy Lujan's testimony, the district court did not err by admitting it. The district court held a suppression hearing at which it watched the tape of the 2011 Interview and heard testimony from Thompson. The court found that (1) Lujan did not trick Thompson into waiving his *Miranda* rights by falsely misrepresenting that Lujan would cease the

---

[35] *See United States v. Martinez*, 551 F. App'x 232, 233-34 (5th Cir. 2014) (per curiam) ("A conviction under Section 2250 does not require notice of SORNA but only 'notice of a duty to register under state law.'" (quoting *Whaley*, 577 F.3d at 262)).

[36] *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009) (citing *United States v. Rico*, 51 F.3d 495, 500 (5th Cir. 1995)).

[37] *See United States v. Bengivenga*, 845 F.2d 593, 600 (5th Cir. 1988) ("A violation of *Miranda* rules, rules fashioned to secure the Fifth Amendment's privilege against custodial interrogation, necessitates only the exclusion of *testimonial* evidence from the prosecution's case in chief." (emphasis added)).

interrogation if Thompson signed a waiver form; (2) Thompson "did not unambiguously invoke his right to counsel;" and (3) Thompson's statements to Lujan were voluntary notwithstanding Thompson's age and physical condition. After reviewing the record and viewing the facts in the light most favorable to the Government, we conclude that the district court's findings were not clearly erroneous.[38]

## D.

Finally, Thompson raises a number of challenges to the district court's jury instructions, which we reproduce here in relevant part:

> A sex offender is required to register where he resides, which is the location of his home or other place where he habitually lives.
>
> "Resides" means the location of an individual's home or other place where that individual habitually lives, even if the person has no home or fixed address anywhere or is homeless.
>
> Places where a person "habitually lives" include places in which that person lives with some regularity.
>
> Under the Sex Offender Registration and Notification Act, a sex offender shall, within three business days after each "change of residence," register his change of residence with the appropriate jurisdiction where he now resides.
>
> The permanent abandonment of an abode constitutes a "change of residence," regardless of whether a new residence has been formally adopted.

Thompson objected to the jury instructions and thereby preserved his challenges for appellate review. "Ordinarily, we review a jury instruction for abuse of discretion, affording substantial latitude to the district court in

---

[38] *See Menchaca-Castruita*, 587 F.3d at 289 (citing *Rico*, 51 F.3d at 500)).

describing the law to the jury."[39] "Under this standard, we consider whether the charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them."[40] "However, when a jury instruction hinges on a question of statutory construction, our review is de novo."[41]

As explained below, we find no error in the district court's instructions.

1.

42 U.S.C. § 16911(13) states that "[t]he term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." Unlike the district court's jury instructions, 42 U.S.C. § 16911(13)'s definition of "resides" does not include the phrase "even if the person has no home or fixed address anywhere or is homeless." Thus, the district court provided the jury a definition of "resides" that went beyond the statutory definition.

Thompson argues that, because the term "resides" is neither "highly 'technical or specific'" nor "'outside the common understanding' of jurors," the district court should not have provided the jury a definition of that term that went beyond the definition provided in 42 U.S.C. § 16911(13).[42] However, Thompson concedes that this Court's decision in *United States v. Wampler*

---

[39] *United States v. Williams*, 610 F.3d 271, 285 (5th Cir. 2010) (citing *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009)).

[40] *Id.* (citing *Santos*, 589 F.3d at 764) (internal quotation marks and brackets omitted).

[41] *Id.* (citations omitted).

[42] *See United States v. Chenault*, 844 F.2d 1124, 1131 (5th Cir. 1988) ("A trial court need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition." (citing *United States v. Johnson*, 575 F.2d 1347, 1357-58 (5th Cir. 1978))).

precludes his challenge.[43] He raises the issue only to preserve it for "en banc review, or a cert petition, in the future." Because our Court's precedent in *Wampler* controls, we reject this challenge.

2.

Thompson next challenges the district court's instruction that "[t]he permanent abandonment of an abode constitutes a 'change of residence,' regardless of whether a new residence has been formally adopted." Thompson argues that "one has not changed one's residence until one has established a new residence where one resides or will reside."

This challenge fails as well. As we explained above, a sex offender must "update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence."[44] "[A] savvy sex offender" may not "avoid having to update his SORNA registration" by "mov[ing] to a different city" and then "sleeping in a different shelter or other location every night."[45] The jury instructions quoted directly from one of the leading cases on this issue.[46] As a result, the instructions accurately stated the applicable law.

3.

---

[43] *See* 703 F.3d 815, 818 (5th Cir. 2013) (rejecting challenge to jury instruction that stated: "'Resides' means the location of an individual's home or other place where that individual habitually lives, even if the person has no home or fixed address in that state or no home anywhere.").

[44] *Van Buren*, 599 F.3d at 175.

[45] *Voice*, 622 F.3d at 875. *Accord Murphy*, 664 F.3d at 802.

[46] *Compare Murphy*, 664 F.3d at 802 ("The permanent abandonment of an abode constitutes a change of residence, regardless of whether a new residence has been formally adopted.") *with* ROA 197 ("The permanent abandonment of an abode constitutes a 'change of residence,' regardless of whether a new residence has been formally adopted.").

No. 15-40370

Finally, Thompson argues that a sex offender only "habitually lives" in a place if he lives there for at least thirty days. He bases his argument on the following excerpt from the Attorney General's National Guidelines for Sex Offender Registration and Notification (the "SMART Guidelines"):

> "Habitually lives" accordingly should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons. The specific interpretation of this element of "residence" these Guidelines adopt is that a sex offender habitually lives in the relevant sense in any place in which the sex offender lives *for at least 30 days*. Hence, a sex offender resides in a jurisdiction for purposes of SORNA if the sex offender has a home in the jurisdiction, *or if the sex offender lives in the jurisdiction for at least 30 days*.[47]

Thompson resided in McKinney for approximately twenty days before law enforcement officials arrested him for failing to update his registration. Because Thompson had not resided in McKinney for thirty days, he argues that he qualifies for a "safe harbor" under the SMART Guidelines.

Thompson asked the district court to include the above-quoted language in its jury instruction and argues that the district court erred in declining to include it. Thompson's argument fails because it ignores other sections of the SMART Guidelines. In a provision of the SMART Guidelines that Thompson neglects to mention or analyze, the Attorney General qualifies the above-quoted thirty-day residency language as follows:

> As to the timing of registration based on changes of residence, *the understanding of "habitually lives" to mean living in a place for at least 30 days does not mean that the registration of a sex offender who enters a jurisdiction to reside may be delayed until after he has*

---

[47] Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030-01, 38062 (July 2, 2008) (hereinafter "SMART Guidelines") (emphasis added).

17

*lived in the jurisdiction for 30 days*. Rather, a sex offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction must be required to register within three business days, as discussed in Part X.A of these Guidelines. Likewise, *a sex offender who changes his place of residence within a jurisdiction must be required to report the change within three business days*, as discussed in Part X.A.[48]

Thus, under the SMART Guidelines, because Thompson abandoned his residence in one city in Texas and relocated to another city in Texas, Thompson qualified as "a sex offender who changes his place of residence within a jurisdiction" – i.e., within the State of Texas.[49] Thompson was therefore "required to report the change within three business days."[50] Thompson failed to do so.

Because Thompson's proposed instruction omits crucial qualifying language from the SMART Guidelines, it would have misled the jury regarding when Thompson was required to update his registration. As a result, the district court correctly rejected the proposed instruction.

## IV.

Because the district court committed no error, we affirm Thompson's conviction.

AFFIRMED.

---

[48] SMART Guidelines, at 38062 (emphasis added).

[49] *Id.* SORNA defines "jurisdiction" to mean, *inter alia*, "[a] State." 42 U.S.C. § 16911(10)(A).

[50] SMART Guidelines, at 38062.